ZIMMERMAN, Exr., Appellant,

v.

ST. PETER'S CATHOLIC CHURCH, Appellee.

[Cite as *Zimmerman v. St. Peter's Catholic Church* (1993), 87 Ohio App.3d 752.]

Court of Appeals of Ohio,
Montgomery County.

No. 13719.

Decided June 23, 1993.

*Dyer, Garofalo, Mann & Schultz* and *Douglas A. Hess,* for appellant.

*Rendigs, Fry, Kiely & Dennis, Lawrence E. Barbiere* and *Terrence M. Garrigan,* for appellee.

FREDERICK N. YOUNG, Judge.

Michael E. Zimmerman ("appellant"), in his capacity as executor of the estate of Patricia L. Zimmerman, deceased, appeals from the entry by the trial court of summary judgment in favor of St. Peter's Catholic Church ("appellee") entered on October 16, 1992.

The facts of the case and the reasoning of the trial court in entering summary judgment in favor of appellee are both succinctly and sufficiently set forth in the

decision of the Honorable John P. Petzold, parts of which we now incorporate into our opinion, as follows:

"On December 8, 1989, plaintiff's decedent, Patricia Zimmerman, fell while attending a bingo game at defendant St. Peter's Catholic Church. On that particular day, there was inclement weather including a large amount of snow and slush. Approximately three weeks later, on December 27, 1989, plaintiff's decedent died allegedly as a result of injuries sustained in the aforementioned fall. Plaintiff has brought suit claiming the wrongful death of plaintiff's decedent, Patricia Zimmerman.

"The defendant moves this court for summary judgment, asserting there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. For the granting of summary judgment to be appropriate it must appear (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47; see, also, Ohio R.Civ.P. 56(C). The moving party bears the burden of showing that no genuine issue as to any material fact exists. *Harless,* 54 Ohio St.2d at 66, 8 O.O.3d at 74, 375 N.E. at 47.

"Plaintiff's claim is brought pursuant to the Ohio wrongful death statute based on a theory of negligence, R.C. 2125.02. An action for negligence is predicated upon a duty and a breach thereof. The plaintiff claims the defendant breached three separate duties which ultimately led to the death of the decedent. First, plaintiff claims defendant failed to comply with Ohio Basic Building Code to provide a skid-resistant surface for the access ramp into Fehrenbach Hall located in St. Peter's Catholic Church. Second, plaintiff contends defendant failed to provide floor mats directly inside or outside Fehrenbach Hall. Finally, plaintiff claims defendant failed to warn patrons of excess water on the floor thereby breaching their duty causing injury to the decedent.

"First, plaintiff argues that the defendant was negligent *per se* by failing to have skid-resistant mats on the access ramp as required by the Ohio Basic Building Code. This argument must fail. Ohio law states that only legislative enactments give rise to negligence-*per se* claims. The Ohio Basic Building Code is an administrative regulation, not a legislative enactment, and, as such, any violation would not constitute negligence *per se. Jaworowski v. Med. Radiation Consultants* (1991), 71 Ohio App.3d 320 [594 N.E.2d 9]. Evidence of a violation of an administrative regulation is, however, admissible in evidence regarding the

issue of the want of ordinary care. *Matz v. J.L. Curtis Cartage Co.* (1937), 132 Ohio St. 271 [8 O.O. 41, 7 N.E.2d 220]."

The court then analyzed the case in terms of the breach of duty in a negligence action. Since on appeal the appellant has abandoned all claims against the appellee except for the negligence-*per se* argument, we do not need to examine the arguments regarding the breach of a duty of ordinary care. Suffice it to say, the trial court dismissed appellant's claims in that regard, finding ample authority under Ohio law that appellee did in fact exercise ordinary care in rendering its premises safe for invitees, *Boles v. Montgomery Ward & Co.* (1950), 153 Ohio St. 381, 384, 41 O.O. 403, 404, 92 N.E.2d 9, 11; *Campbell v. Hughes Provision Co.* (1950), 153 Ohio St. 9, 41 O.O. 107, 90 N.E.2d 694; *S.S. Kresge Co. v. Fader* (1927), 116 Ohio St. 718, 158 N.E. 174. The trial court concluded:

"There is no dispute as to any of the material facts of this case. Both sides agree that plaintiff's decedent did in fact fall in St. Peter's Catholic Church on December 8, 1989. Further, plaintiff has never contended that the fall was proximately caused by a substance other than water tracked in by the plaintiff's decedent or other patrons. The law of Ohio has firmly established that there is no duty of a property owner beyond that of ordinary care in slip-and-fall cases. Defendant provided mats immediately inside its entry way. This is the ordinary care shown by store owners and homeowners alike. It is not necessary for a property owner to place mats or signs in every conceivable place an accident could occur when its patrons are on notice of the hazards of inclement weather.

"In viewing the facts and inferences therefrom in light most favorable to plaintiff, it is apparent that the material facts are undisputed. Plaintiff has failed to show a duty beyond that of ordinary care or a breach thereof by the defendant. Thus, as a matter of law, defendant is entitled to summary judgment in its favor."

The appellant brings to this court on appeal only one issue, which it frames as follows:

Assignment of Error

"The trial court erred in granting summary judgment against plaintiff by failing to recognize that the provisions of the Ohio Basic Building Code are tantamount to legislative enactments, the violation of which would constitute negligence *per se.*"

I

The trial court dismissed the appellant's claim on this issue on the ground that in Ohio "only legislative enactments give rise to negligence *per se* claims" and, since the Ohio Basic Building Code is an administrative regulation, a violation of it would not constitute negligence *per se.* The trial court cited the decision of this

court in *Jaworowski v. Med. Radiation Consultants* (1991), 71 Ohio App.3d 320, 594 N.E.2d 9, in support of its conclusion.

In that case, this court rested its decision in part on the seminal case of *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440. The following is the relevant portion of our decision in *Jaworowski:*

·"Where a legislative enactment imposes a specific duty upon a person for the safety and protection of others, the failure to observe that duty is negligence *per se. Taylor v. Webster* (1967), 12 Ohio St.2d 53, 41 O.O.2d 274, 231 N.E.2d 870; *Gressman v. McClain* (1988), 40 Ohio St.3d 359, 362, 533 N.E.2d 732, 735. As noted in *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, at paragraph three of the syllabus:

" 'Where there exists a *legislative enactment* commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it, such violation constitutes negligence per se; *but where there exists a legislative enactment expressing for the safety of others, in general or abstract terms, a rule of conduct, negligence per se has no application and liability must be determined by the application of the test of due care as exercised by a reasonably prudent person under the circumstances of the case.* (Emphasis added.)'

"While certain 'laws' give rise to protective obligations that are so specific and mandatory that the failure to comply is negligence *per se,* the Ohio Administrative Code provisions regulating the use of radiation-producing devices are not such 'laws.' The radiation-protection provisions are administrative regulations, not legislative enactments or statutes. The distinction between the two types of measure is important. The only 'laws' in Ohio which historically have been held to create specific and mandatory duties the violation of which constitutes negligence *per se* are legislative enactments, not administrative regulations. See *Sausen v. Jindal* (Apr. 6, 1983), Hamilton App. No. C–820469, unreported, 1983 WL 8778. [Additional citations omitted and emphasis added.]" *Jaworowski, supra,* 71 Ohio App.3d at 329, 594 N.E.2d at 15.

In *Jaworowski,* this court set forth the historical pattern in Ohio cases that distinguished between laws and regulations in finding negligence *per se.* However, *Jaworowski* was not decided on the distinction between a statute and a regulation in respect to negligence *per se,* but because the administrative provisions involved in that case were general in nature and did not impose the specific, mandatory duties required for negligence *per se.* This was the rule announced in *Eisenhuth v. Moneyhan* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, which *Jaworowski* cited and followed.

The Ohio Supreme Court wrestled at length with the distinction between legislative enactments and administrative regulations in *Matz v. J.L. Curtis Cartage Co.* (1937), 132 Ohio St. 271, 8 O.O. 41, 7 N.E.2d 220, where the court held that a violation of a safety regulation adopted by the Public Utilities Commission pursuant to authority conferred upon it by law does not constitute negligence *per se,* but that such a regulation is admissible in evidence as bearing on the question of the want of ordinary care.

The authorities cited above all support the rule that in Ohio a violation of an administrative regulation can never be negligence *per se,* and therefore we could simply conclude our opinion here and affirm the trial court without further discussion. We are not persuaded, however, that in this day and age a rule that forever precludes a finding of negligence *per se* for a violation of an administrative regulation has as much force and validity as perhaps it used to. The appellant properly argues in his brief that "the concept of legislative enactments includes more than just statutes, specifically to include properly promulgated administrative regulations. The prevailing position nationwide has been that [the violation of] a regulation may constitute negligence per se provided it has been duly promulgated and is consistent with enabling legislation. 57 *AmJur2d* 799 et seq." Appellant's brief at 6.

Further, we recognize that violation of certain regulations has been held to be negligence *per se* in other states. See, *e.g., Brashear v. Puget Sound Power & Light Co.* (1982), 33 Wash.App. 63, 651 P.2d 770; *Nordeen v. Hammerlund* (1986), 132 Wis.2d 164, 389 N.W.2d 828, both of which are cited by appellant in his brief.

There is also some indication that Ohio courts have begun to move in the direction of the prevailing national view. In *Hackel v. The Blind Monk, Ltd.* (Nov. 8, 1988), Franklin App. No. 88AP–519, unreported, at 10, 1988 WL 121278, the Franklin County Court of Appeals affirmed the judgment of the trial court and, in the course of its opinion, noted without disapproval that "the trial court determined that defendant was negligent as a matter of law, or negligent *per se,* because the defendant's step violated the Ohio Building Code, which requires a ramp if there is a five-to-six inch difference in elevation." The Summit County Court of Appeals has held that the violation of a specific building code provision, *i.e.,* the installation of a step riser eight and five-eights inches instead of the code's maximum riser height of eight inches is negligence *per se. Nemer v. Kerkian* (Feb. 5, 1992), Summit App. No. 15153, unreported, 1992 WL 20797. That decision is weakened, however, by the fact that it relies on the Ohio Supreme Court decision in *Swoboda v. Brown* (1935), 129 Ohio St. 512, 2 O.O. 516, 196 N.E. 274, which distinguished negligence from negligence *per se* and defined "negligence *per se*" as a violation of an absolute and specific law, ordinance, or

statute. The same flawed reliance on *Swoboda* was made by the court in *Moore v. McCarty's Heritage, Inc.* (1978), 62 Ohio App.2d 89, 95, 16 O.O.3d 219, 223, 404 N.E.2d 167, 172, when it stated that:

"Where a building code imposes upon a builder a specific duty for the protection or benefit of others and he neglects to perform that duty, he is liable to those for whose protection or benefit it was imposed for any damages which were proximately produced by such neglect. *Swoboda v. Brown, supra* [129 Ohio St.] at 521 [2 O.O. at 520, 196 N.E. at 278]."

The appellant has also pointed out that the Lucas County Court of Appeals has at least recognized the *possibility* that a violation of the Ohio Basic Building Code which amounts to an "unreasonably dangerous defect" (see below) might constitute negligence *per se.* *Wicichowski v. Gladieux V. Enterprises, Inc.* (1988), 54 Ohio App.3d 177, 178–179, 561 N.E.2d 1012, 1014:

"Nevertheless, Ohio Adm.Code 4101:2–1–06 requires liberal construction of the Ohio Basic Building Code and states that unnecessary hardship is to be avoided, ' * * * provided the spirit and intent of this code shall be observed and the public safety, health, and welfare is [*sic*] assured.' Furthermore, ' * * * [i]njuries occasioned by insubstantial defects should not be actionable unless circumstances render them "unreasonably dangerous." * * * ' *Raflo v. Losantiville Country Club* (1973), 34 Ohio St.2d 1, 4, 63 O.O.2d 1, 2, 295 N.E.2d 202, 204. This court cannot say that this variation of one and one-half inches in the height of the rail was a substantial, unreasonably dangerous defect constituting negligence *per se,* in light of Ohio Adm.Code 4101:2–1–06 and the fact that Section 828.2.2 of the BOCA National Building Code 1987, Tenth Edition, effective January 1, 1989 in Ohio, now provides:

" 'Handrails shall not be less than 34 inches (864 mm) nor more than 38 inches (965 mm), measured vertically, above the nosing of the treads or above the finished floor of the landing or walking surfaces.'

"Appellee's railing conforms to these height provisions."

A federal court of appeals has found a violation of specific federal air regulations in Ohio to be negligence *per se* because the state of Ohio has adopted these regulations as its own (R.C. 4561.05 and 4561.14). *Bibler v. Young* (C.A.6, 1974), 492 F.2d 1351. R.C. 4561.14 provides as follows: "No person shall operate an aircraft within this state in violation of any air traffic rules in force under the laws of the United States or under sections 4561.01 to 4561.14 of the Revised Code, *and the rules and regulations of the department adopted pursuant thereto.*" (Emphasis added.) But compare that decision with the Ohio Supreme Court's in *Matz, supra,* where the court held that a violation of the PUCO

regulation was not negligence *per se* in spite of the fact the legislature had made this violation a misdemeanor.

This court has followed the Ohio Supreme Court, which in the case of *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 525 N.E.2d 808, held that the Manual of Uniform Traffic Control Devices and its provisions have the force of law pursuant to R.C. 4511.11. *Tiley v. Baltimore & Ohio RR. Co.* (Oct. 20, 1988), Miami App. No. 88–CA–7, unreported, 1988 WL 110314. R.C. 4511.11(A) provides, in part, that "[l]ocal authorities in their respective jurisdictions shall place and maintain traffic control devices in accordance with the department of transportation manual and specifications for a uniform system of traffic control devices." R.C. 4511.11(D) provides: "All traffic control devices erected on a public road, street, or alley, shall conform to the state manual and specifications." In *Tiley,* this court found that the Miami County Commissioners violated a statutory duty imposed upon them by R.C. 4511.11 and a particular section of the traffic manual and therefore found them negligent *per se.*

As the appellant points out in his brief, there is really not much difference between the legislature mandating certain traffic control devices through a board which does the actual promulgation of them, and mandating certain building standards through a board which does the actual promulgation of them. R.C. 3781.10(A) states in part:

"The board of building standards shall:

"(A) Formulate and adopt rules governing the erection, construction, repair, alteration, and maintenance of all buildings or classes of buildings specified in section 3781.06 of the Revised Code. * * * The standards shall relate to the conservation of energy in and to the *safety* and sanitation of such buildings. The rules shall be the *lawful minimum requirements* specified for such buildings." (Emphasis added.)

The Ohio General Assembly has also decreed in R.C. 3791.01 that "[n]o owners * * * or other person shall construct, erect, build, or equip [a] * * * church * * * or other building used for the assemblage * * * of people * * * without complying with Chapters 3781. and 3791. of the Revised Code *or rules or regulations adopted pursuant thereto.*" (Emphasis added.)

Is it therefore not possible that in some appropriate case we may find that a substantial violation of a very specific building code provision that directly relates to health and safety (*e.g.,* the storage of hazardous chemicals) to be negligence *per se?* We believe it would be possible.

## II

We must now determine whether the alleged violation in this case of a building code requirement by the appellee constituted negligence *per se.*

The appellant asserts that the appellee violated Ohio Adm.Code 4101:2–8–15, which states in part that a ramp which makes up a portion of a building's means of egress "shall be surfaced with approved slip-resistant materials." In support of his claim, appellant presented for the record an affidavit of a registered professional engineer, which contained his opinion that the ramp upon which the appellant's decedent fell "is not in compliance with respect to those building codes requiring the use of slip-resistant materials for such structures."

■ As an initial comment, we must state that the record does not provide definitive proof that the appellee actually did violate the Ohio Basic Building Code in constructing the ramp in issue. The appellee points out that the plans for St. Peter's Catholic Church were approved on August 10, 1978, and that therefore the 1978 Ohio Basic Building Code applies, not the 1979 building code, which appellant has cited. It is obvious that the plans for the church were approved or it would not be here today. R.C. 3791.04 provides in part as follows:

"When any plans are approved by the department having jurisdiction, the structure and every particular thereof represented by those plans and disclosed therein shall, in the absence of fraud or a serious safety or sanitation hazard, be conclusively presumed to· comply with Chapters 3781. and 3791. of the Revised Code and any rule issued pursuant thereto, if constructed, altered or repaired in accordance with those plans and any such rule in effect at the time of approval."

Since no evidence is found in the record that the appellee was in noncompliance in 1978, we would have to presume that it was in compliance. The affidavit of the engineer submitted by appellant is some evidence that the appellee's ramp is not in compliance *today,* but of course that is only one opinion. If a structure that complies with the code when it is erected becomes later in noncompliance due to a change in a provision of the code, there are provisions for correcting it, but these provisions require an inspection by a code official and a determination that the original structure is a "serious" hazard. Ohio Adm.Code 4101:2–8–04. The engineer whose affidavit was submitted by the appellant is not an official of the department that has jurisdiction over the church in issue, and we cannot find noncompliance by the appellee with regard to the ramp in question until it has been determined, after inspection, by an official of the issue in question that the ramp is in violation.

■ But assuming, *arguendo,* that the ramp actually is in violation, does this violation rise to the status of negligence *per se?* We think not.

A full text of the Ohio Basic Building Code provision that appellant claims to govern this case is as follows:

"615.4.1  Surface:  For all slopes exceeding one (1) in twelve (12), and *wherever the use is such as to involve dangerous slipping*, the ramp shall be surfaced with *approved* non-slip materials."  (Emphasis added.)

The two underlined portions of this code provision clearly indicate that some judgmental determination is required in the application of the code to any particular ramp.  It must first be determined that the use of the ramp in question involves the danger of slipping.  The code provision in question is listed under Section 615.0, which is entitled "Egress Ramps."  We do not know from the record whether "egress ramps" means all ramps wherever found or applies only to those ramps which provide egress from a building to the outside, where clearly there would be an enhanced risk of slipping because of the rain, snow, and ice which the ramp would be exposed to.  Interior ramps far from the entrance and exit to a building, like the one in issue in this particular case, could be determined not to involve a serious danger of slipping.  Whatever the case, it is abundantly clear that the code provision cited above cannot be automatically applied to a structure.  It must be judged through the mysterious processes of the human mind in order to reach a decision as to its application.

■  We also note that the code provision cited by the appellant and quoted above states that the ramp shall be serviced with "approved" non-slip materials. We do not know what materials are approved by the department having jurisdiction of this church, but we take judicial notice that there are more than one material and more than one method available to surface a ramp to reduce the risk of slipping on it.  In any case, the material must be approved by someone, presumably the department having jurisdiction over the structure in issue, and the active approval obviously involves another determination and conclusion by a human mind.

All Ohio courts which have considered whether a violation of an administrative regulation constitutes negligence *per se* have applied the same reasoning to administrative regulations that has been applied by the courts to violations of statutes or ordinances, that is, that the violation of a specific, detailed requirement can be negligence *per se* in the appropriate case, but that the violation of a requirement that is general or abstract is not negligence *per se*.  See, *e.g.*, *Sausen v. Jindal* (Apr. 6, 1983), Hamilton App. No. C–820469, unreported, 1983 WL 8778, and *Jaworowski v. Med. Radiation Consultants, supra.*

The analysis is parallel to the analysis approved by this court as to whether a specific traffic code section is so definite as to elicit a negligence *per se* category violation or avoids application of the negligence *per se* rule by requiring the exercise of official judgment or discretion.  *Tiley v. Baltimore & Ohio RR. Co., supra.*

All these cases, including our decision in *Jaworowski,* refer to the analysis done by the Ohio Supreme Court in *Eisenhuth v. Moneyhon, supra,* between the two types of (in that case legislative) enactments. The court in *Eisenhuth* gave an example of negligence *per se* as the violation of a general code provision that required "that keys, bolts, set screws and all parts of wheels, shafting or other revolving machinery projecting beyond the surface of such revolving machinery be covered, cut off or countersunk * * *." *Id.,* 161 Ohio St. at 375, 53 O.O. at 278, 119 N.E.2d at 444. *Variety Iron & Steel Works Co. v. Poak* (1914), 89 Ohio St. 297, 106 N.E. 24. That example is a perfect illustration of a rule that requires no intervention of human judgment or decisionmaking in order to comply with it. As we have shown, the building code provision asserted by appellant in this case is not that specific or detailed and does require intervention of human judgment and decision making in order to comply with it.

Furthermore, even in the absence of the underlined qualifiers in Section 615.4.1, cited above, we would find that the required surfacing of ramps with non-slip materials would not be such a specific and absolute command that the violation of which would constitute negligence *per se.* As we noted, there is certainly more than one material in the marketplace which is used to render a ramp slip resistant. There are special paints and coatings and special materials. Even cross slats have been used. The choice of the proper material depends on the location and intended use of the ramp, its height and width, the visibility of the area, and probably other factors that only properly trained engineers can calculate. See, *e.g., Sibberson v. Mercy Hosp.* (Mar. 31, 1989), Lucas App. No. L–88–236, unreported, 1989 WL 29846, where an engineer claimed a ramp was unreasonably dangerous because, so he had been told, its coefficient of friction was .5.[1]

■ For the violation of a particular regulation, ordinance, or law to be held negligence *per se,* its violation must be obvious and clear. See, *e.g.,* the example in *Eisenhuth.* If the violation has to be proved through expert testimony it is obvious that human reasoning and judgment are involved in testing the condition against the rule. The requirement that a ramp be surfaced with "non-slip materials" is a conclusionary rule requiring human thought and judgment to achieve compliance with it.

■ Finally, even an obvious violation of a specific, direct code provision may not be negligence *per se* unless it is an unreasonably dangerous condition. *Wicichowski v. Gladieux, supra.* There is no evidence in the record before us that the ramp in question in this case constituted such a substantial violation of

---

1. Whatever that means.

whatever building code requirement applies to it as to render it unreasonably dangerous.

We find that the requirement of a surfacing of a ramp with approved slip-resistance materials and only whenever its use is such as to involve dangerous slipping conditions is not such a specific, detailed requirement as to invoke negligence *per se* upon its violation because it requires the intervention of human thought process, judgment, and decision making in order to comply with it.

Appellant's sole assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

GRADY, P.J., and BROGAN, J., concur.