DANIELS, Appellant,

v.

THISTLEDOWN RACING CLUB, INC. et al., Appellees.*

[Cite as *Daniels v. Thistledown Racing Club, Inc.* (1995), 103 Ohio App.3d 281.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67345.

Decided May 8, 1995.

_____

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 74 Ohio St.3d 1404, 655 N.E.2d 184.

282

*Serrat & Naso* and *Carmen P. Naso,* for appellant.

*Weston, Hurd, Fallon, Paisley & Howley, Timothy D. Johnson, Lisa B. McComas* and *Gregory E. O'Brien,* for appellees.

PATTON, Chief Judge.

Plaintiff-employee Phyllis Ann Daniels worked as a groomer for a horse trainer at defendant Thistledown Racing Club, Inc. In addition to her salary, the trainer provided plaintiff a small room above one of the horse barns for use as sleeping quarters. During the evening of June 22, 1991, a jockey entered plaintiff's unlocked room as she slept and raped her. Plaintiff filed this action against Thistledown, alleging Thistledown had permitted a hazardous condition to exist and further breached a statutory duty to provide a safe work place. Thistledown filed a motion for summary judgment in which it argued it had no duty to protect plaintiff from unforeseen criminal acts. The trial court granted the motion,

finding no evidence in the record to support the conclusion that Thistledown knew or had reason to know the jockey would commit a crime. Additionally, the trial court found plaintiff provided no evidence of any activity that would give Thistledown notice the jockey, or any other person, was likely to commit an attack upon plaintiff or any other employee. Plaintiff appeals and sets forth the following assignment of error:

"The trial court erred in granting Defendant's Motion for Summary Judgment in that there are issues of material fact regarding the duty owed by the Defendant to the Plaintiff and the Defendant's breach of this duty."

■ In order to establish actionable negligence, a plaintiff must establish a duty owed her by defendants, breach of that duty, proximate cause of the injury, and an injury. *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614, 616–617; *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 180–181, 472 N.E.2d 707, 710.

## A

■ Plaintiff first argues that we should adopt Section 344 of the Restatement of the Law 2d, Torts (1965), and find that Thistledown owes her a duty based upon its act of opening its premises to the public.

Section 344 states:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animal, and by the failure of the possessor to exercise reasonable care to

"(a) discover that such acts are being done or are likely to be done, or

"(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

Section 344 of the Restatement is inapplicable since plaintiff was not a member of the public who entered Thistledown for business purposes. She worked for a horse trainer, not Thistledown. The horse trainer paid her and gave her the use of a room at no charge. As a person who did not work for Thistledown, but had the right to enter the Thistledown premises, plaintiff had the status of a frequenter.

Under R.C. 4101.01(E), a "frequenter" is defined as "every person, other than an employee, who may go in or be in a place of employment under circumstances which render him other than a trespasser." The duty that an employer owes to a frequenter is set forth in R.C. 4101.11, which provides:

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

The duty owed to frequenters "is no more than a codification of the common-law duty owed by an owner or occupier of premises to invitees, requiring that the premises be kept in a reasonably safe condition, and that warning be given of dangers of which he has knowledge." *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 249, 512 N.E.2d 1165, 1167, citing *Westwood v. Thrifty Boy* (1972), 29 Ohio St.2d 84, 58 O.O.2d 154, 278 N.E.2d 673, paragraph one of the syllabus. The owner or occupier is not an insurer of the safety of invitees and only owes a duty to the invitee to exercise ordinary care to maintain the premises in a reasonable, safe condition. *Cyr v. Bergstrom Paper Co.* (1982), 3 Ohio App.3d 299, 301, 3 OBR 345, 347–348, 444 N.E.2d 1349, 1351–1352. This equates to a duty of ordinary care. *Debie v. Cochran* (1967), 11 Ohio St.2d 38, 40 O.O.2d 52, 227 N.E.2d 603.

Thistledown posts security guards at track entrances. Only persons issued a license by the Ohio Racing Commission are allowed in the track area after races. The jockey who committed the rape was a license holder. He entered the grounds in the early morning hours of June 22, 1991, in a noticeably intoxicated condition. One of the security guards noted that the jockey was "feeling no pain" and told him to "settle down." After the rape, the jockey told the police, "I can hardly remember doing all this as drunk as I was * * *."

This evidence of the jockey's intoxication does not lead to the conclusion that Thistledown had knowledge or reason to believe he would commit a sexual assault. There is no evidence to show that the jockey had been intoxicated on other occasions and attempted to assault other persons. In fact, the unrebutted evidence showed that security guards had no previous problems with the jockey and considered him well-mannered.

Plaintiff did testify that the jockey had previously made two unwelcome advances toward her, but she did not communicate this information to Thistledown stewards or security. In any event, she admitted at deposition that his reaction to her rejections was not such as to suggest the possibility he might retaliate with the use of force. Given the absence of any prior behavior or immediate concern for plaintiff's safety, we find no evidence in the record that

would alert Thistledown security to the possibility the intoxicated jockey would commit the sexual assault.

Plaintiff submitted the affidavit of a retired city of North Randall police sergeant who averred that he had firsthand knowledge of the security measures employed by Thistledown. In the sergeant's opinion, Thistledown provided inadequate security measures since the guards allowed an obviously intoxicated individual onto the premises. In addition, the sergeant criticized the fact that the post nearest to plaintiff's quarters had not been staffed on the evening of the rape. Had the post nearest plaintiff's quarters been staffed, the sergeant believed that security guards might have heard her cries for help.

Although security incident reports in the record show prior reports of intoxicated individuals on Thistledown grounds, none of those intoxicated individuals were involved in criminal acts of sexual assault. The record simply fails to show that the jockey, or any other individual for that matter, gave Thistledown any reason to suspect intoxication could lead to acts of sexual assault.

As to the placement of the guard posts, the record also fails to support the conclusion that the assault might have been prevented had a guard been posted nearer to plaintiff's quarters. The trial court ordered the expert's opinion stricken because the record contains no facts showing plaintiff made any cries for help. Hence, even had the guard post nearest to plaintiff's quarter been staffed, the evidence does not permit the conclusion that a guard might have heard the sexual assault and intervened.

## B

■ Plaintiff next argues that liability could be imposed for a *per se* violation of racetrack regulations promulgated by the Ohio Racing Commission. She cites Ohio Adm.Code 3769–4–12, requiring permit holders to provide around-the-clock patrol of the stable area; Ohio Adm.Code 3769–4–19, requiring permit holders to provide adequate and sanitary living quarters; and Ohio Adm.Code 3769–4–57, which permits the track chief of security to order any person licensed by the Ohio Racing Commission to submit to a breath test at any time the chief of security believes that person may have consumed sufficient alcohol to cause that person to fail the breath test.

■ Where a statute does not expressly provide for civil liability, the question whether a violation of the statute constitutes negligence *per se* depends on the enactment itself. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 319, 544 N.E.2d 265, 270–271. In *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, paragraph three of the syllabus states:

"Where there exists a legislative enactment commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it, such violation constitutes negligence *per se;* but where there exists a legislative enactment expressing for the safety of others, in general or abstract terms, a rule of conduct, negligence *per se* has no application and liability must be determined by the application of the test of due care as exercised by a reasonably prudent person under the circumstances of the case."

■ Where a specific requirement is made by statute and an absolute duty is imposed, no inquiry is to be made whether the defendant acted as a reasonably prudent person or exercised due care. *Swoboda v. Brown* (1935), 129 Ohio St. 512, 522, 2 O.O. 516, 520–521, 196 N.E. 274, 278–279. A lack of reasonable care is presumed from the violation of the duty imposed by the legislative authority.

The regulations cited by plaintiff do not set forth specific duties to be followed by permit holders like Thistledown. The obligations to provide safe and sanitary living quarters, around-the-clock patrols and discretionary breath tests are general requirements that may be fulfilled a variety of ways. Accordingly, we conclude that violations of the administrative regulations in the present case do not constitute negligence per se. See *Jaworowski v. Med. Radiation Consultants* (1991), 71 Ohio App.3d 320, 329–330, 594 N.E.2d 9, 15–16. It follows that the trial court did not err by granting summary judgment. The assigned error is overruled.

The judgment is affirmed.

*Judgment affirmed.*

DYKE, J., concurs.

PATRICIA A. BLACKMON, J., dissents.

PATRICIA A. BLACKMON, Judge, dissenting.

I respectfully dissent from the majority opinion. I would have reversed this case.

Phyllis Daniels worked as a horse groomer for trainer Larry Hayes at Thistledown. Hayes and other trainers were allowed use of dormitory-style rooms located above the stables. Hayes assigned Daniels one of the rooms. The rooms were each ten feet by twelve feet in area, and had no windows, ventilation or plumbing. The sole entrance of each room had both a screen door and a solid wooden door. The screen door was equipped with a hook-type latch that could be locked from the inside. The wooden door was equipped with a latch that could be padlocked from the outside.

After hours, security guards were stationed at Thistledown's main gate to keep unauthorized personnel from entering Thistledown property. All Thistledown personnel were issued identification cards which they were required to show when entering the grounds.

On June 22, 1991, Daniels returned to her room around 11:00 p.m. after an evening out. She began to watch television and eventually fell asleep, forgetting to lock the door to her room. At around 2:00 a.m., William Holtkamp, a jockey who was also staying in one of the stable area rooms, returned to Thistledown and passed through the front security gate. Holtkamp told Thistledown security guards Joseph Galati and John Simko that he had just returned from a local bar. Galati smelled the alcohol on Holtkamp's breath and remarked to Simko that Holtkamp was "feeling no pain." Galati told Holtkamp to "be safe" and to "settle down." Holtkamp proceeded through the gate and went toward the living quarters.

Holtkamp then went to Daniels's room, entered through the unlocked door and raped her. Daniels reported the crime to security who alerted local police. Holtkamp confessed to the rape and was sentenced to jail.

Daniels filed this action against Thistledown and its security company alleging a negligent failure to maintain a safe workplace. Thistledown moved for summary judgment, arguing that it owed no duty to protect Daniels from the unforeseeable criminal acts of third persons. In support of her claim that the attack was foreseeable, Daniels introduced Thistledown's stable area incident reports for two years prior to her attack. She also produced, via affidavit, the expert opinion of Andrew Getner, a retired North Randall police sergeant, who stated that inadequate security at Thistledown proximately caused Daniels's injuries. According to Getner, Thistledown security guards were negligent in allowing Holtkamp to enter the premises when he was obviously intoxicated. He also opined that the presence of additional security personnel would have prevented the attack on Daniels.

The trial court granted Thistledown's motion for summary judgment, finding that the attack on Daniels was unforeseeable and, consequently, Thistledown could not be held liable for Daniels's injuries. This appeal followed.

I must begin my analysis with a brief overview of the law of summary judgment. Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts, and written stipulations of facts show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). When evaluating a motion for summary judgment, the trial court must construe the evidence most strongly in favor of the nonmovant. *Id.* Consequently, doubts must be resolved in favor of the nonmovant. *Murphy v. Reynoldsburg* (1992), 65

Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–141. The nonmovant may not rest on his pleadings, however, but must produce evidence on any issue for which he bears the burden of production at trial. *Wing v. Anchor Media of Texas, Ltd.* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099.

Daniels's complaint alleged that Thistledown negligently maintained her workplace and consequently created an unsafe condition. In a summary judgment situation, the nonmovant's burden is one of production of evidence. Here, Daniels had to go forward with evidence that Thistledown owed her a duty of care, that Thistledown breached that duty, and that her injuries were proximately caused by the breach. *Hickman v. Warehouse Beer Sys., Inc.* (1993), 86 Ohio App.3d 271, 273, 620 N.E.2d 949, 950. The movant bears the burden of proving there is no genuine issue for trial. Here, I believe the movant failed to meet that burden.

Daniels argues that the duty owed to her by Thistledown is as set forth in Restatement of the Law 2d, Torts, Section 344:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

Comment *b* to Section 344 provides that the term "third persons" includes all persons other than the possessor of the land. It includes the possessor's servants when they are acting outside the scope of their employment as well as other invitees or licensees upon the premises. By this definition, Section 344 would cover Holtkamp's acts. However, the existence of a duty depends on the foreseeability of the harm. *Reitz v. May Co. Dept. Stores* (1990), 66 Ohio App.3d 188, 191, 583 N.E.2d 1071, 1073–1074. Consequently, the issue is whether Daniels went forward with enough evidence to establish a genuine issue of fact as to whether the attack was foreseeable such as to impose upon Thistledown a duty to protect her from it.

The totality of the circumstances should be considered when determining whether Thistledown knew or should have known that the attack on Daniels was likely to occur. *Id.* at 193, 583 N.E.2d at 1074–1075. Evidence of prior criminal acts on the premises is probative of whether other crimes might occur in the future. *Id.* Daniels presented evidence that Thistledown was aware of prior criminal activity on Thistledown property including theft, assault, trespassing, and vandalism. The incident reports submitted by Daniels indicated that some of the crimes were committed by outsiders or trespassers while others were

committed by Thistledown employees who, like Holtkamp, were entitled to be on the premises. The trial court found that, despite this knowledge, Thistledown could not have foreseen that Holtkamp would carry out such an attack. However, a possessor of land may "know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual." Restatement of Torts, Section 344, Comment *f.* "If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection." *Id.*

Daniels went forward with evidence that Thistledown was aware of prior criminal acts committed on its property. As evidenced by its incident reports, Thistledown was aware that members of the Thistledown community were involved in crimes against one another, which included break-ins, assaults, and thefts. Although there was no evidence of any prior crimes committed by Holtkamp in particular, Thistledown had knowledge of past criminal conduct by other Thistledown personnel. Many of the incidents involved parties who were intoxicated. According to Daniels, the security guards at Thistledown rarely patrolled the area of the living quarters. Daniels's expert opined that Thistledown should have maintained better security in the area around the living quarters. Construing these facts in the light most favorable to the nonmovant, as is required when evaluating a motion for summary judgment, I find that reasonable minds could differ about whether the attack on Daniels was foreseeable to Thistledown.

I also find a genuine issue of fact remained about whether Thistledown met its duty to Daniels as a business invitee to use reasonable care to maintain the premises in a safe condition. Daniels presented evidence that there were two doors on the entrance to her room—a solid wood door which could be padlocked from the outside and a screen door with a hook-type latch that could be secured from the inside. Daniels admitted that she did not lock her door on the night of the attack. However, the evidence indicates that the wooden door could not be locked from the inside. Even if the wooden door to her unventilated, windowless room could have been locked from the inside, Daniels argues it would not have been feasible for her to have closed the door on the warm, humid night of the attack. The only feasible way for Daniels to secure the door to her room to protect herself from intruders was by using the hook-type latch. In light of Thistledown's knowledge that Daniels's room had been broken into less than two months before the rape, I find that a material issue of fact was raised about

whether Thistledown met its duty of reasonable care to safely maintain the premises for Daniels.

Daniels's failure to engage the hook latch does not alter my decision. Daniels's contributory negligence, if any, does not automatically bar her claims for recovery. Issues relating to comparative negligence are to be resolved by a jury unless reasonable minds could not differ upon the evidence. *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 597 N.E.2d 504.

Daniels also argues that Thistledown breached a statutorily defined duty of care. According to Daniels, Thistledown's security personnel were required to follow the guidelines of the Ohio State Racing Commission regulations. Daniels argues that Thistledown violated Ohio Adm.Code 3769–4–12, which provides for, among other things, around-the-clock patrol of a racetrack's stable area. Daniels also argues that Thistledown violated Ohio Adm.Code 3769–4–19 by failing to provide her with adequate and sanitary living quarters. Also, under Ohio Adm.Code 3769–4–57, Daniels argues Thistledown was authorized to remove any licensee from the grounds if his blood-alcohol level tested at or above .035.

Daniels argues that Thistledown's breach of these regulations is, at least, relevant evidence on the issue of whether Thistledown breached its duty of ordinary care. I agree. The violation of an administrative regulation which expresses, in general or abstract terms, a rule of conduct is admissible evidence on the issue of lack of ordinary care. *Zimmerman v. St. Peter's Catholic Church* (1993), 87 Ohio App.3d 752, 756–757, 622 N.E.2d 1184, 1186–1188.

I must note that evidence of such violations, while relevant, does not constitute negligence *per se*. Whether a violation of an administrative regulation or statute constitutes negligence *per se* depends on the nature of the obligation imposed. *Id.* at 761, 622 N.E.2d at 1190. The violation of a specific, detailed requirement may be negligence per se but the violation of a general or abstract requirement is not negligence *per se*. *Id.*

Ohio Adm.Code 3769–4–19's requirement that Thistledown provide "adequate and sanitary" living quarters is general in nature, lacking specific requirements for compliance. Ohio Adm.Code 3769–4–57's prohibition of intoxicated jockeys from participating in racing is inapplicable here because Holtkamp was not participating in a horse race at the time of the attack. Ohio Adm.Code 3769–4–57's *authorization* of the removal of intoxicated licensee's from race track grounds does not impose a specific *mandatory duty or obligation* as is required for the application of negligence *per se*. Ohio Adm.Code 3769–4–12 provides that Thistledown shall maintain around-the-clock patrol of the track's stable area. There is no provision for the frequency of the patrols (*i.e.,* every hour). Therefore, Thistledown is left with discretion as to how to comply with the regulation's requirement. The regulation is not the type of specific, absolute command the

violation of which would be negligence *per se.* See *id.* at 762, 622 N.E.2d at 1190–1191. Evidence of Thistledown's alleged failure to comply with Ohio Adm.Code 3769–4–12 and 3769–4–19 is relevant, but not determinative, of the issue of negligence.

Having found that reasonable minds could differ about whether Thistledown breached its duty of care and whether the injury to Daniels was foreseeable, I would reverse the decision of the trial court.