OPINION
{¶ 1} Appellant, James Merino, appeals the entry of summary judgment by the Columbiana County Court of Common Pleas in favor of Appellee, The Salem Hunting Club ("Club"). Although it was not entirely clear from his notice of appeal and his brief, Appellant conceded at oral argument that summary judgment was properly entered by the trial court in favor of the individual defendants, Rudy Nelson, Dale Iler, Jeffrey Simmons, Jeffrey France, Harry Regal, and Kenneth Bugno. Hence, this appeal entails issues solely dealing with the Club.
 {¶ 2} Appellant is the owner of approximately 35 acres of real property at 1069 Benton Road, Salem, Ohio ("Merino property"), which is immediately adjacent to the Club. In his amended complaint, Appellant claims that Appellee is liable for damage to his property caused by stray bullets and ricochets from the Club under the theories of trespass, nuisance per se, qualified nuisance, and negligence. Appellant further contends that Appellee is liable for damage to his property resulting from lead and hazardous materials that have leached onto his property from the Club's property. Appellant also seeks to enjoin Appellee from continuing to discharge firearms and allow hazardous substances to leach onto his property.
 {¶ 3} The trial court concluded that no genuine issues of material fact existed with respect to the essential elements of Appellant's claims, and that his evidence of actual damages constituted hearsay. However, despite Appellant's failure to support his allegation of actual damages with admissible evidence, genuine issues of material fact exist of record with respect to Appellant's qualified nuisance/negligence claim. Therefore, summary judgment should not have been granted in favor of the Club. *Page 3 
 FACTS {¶ 4} Appellant has lived at the Merino property his entire life, with the exception of a brief period in the 1980s. (Merino Aff., ¶ 2.) He purchased the Merino property in 1999 from his father's estate. (Merino Aff., ¶ 3.) As a child, Appellant's father warned him and his siblings to stay away from the Club's property line because of the shooting activities taking place there. (Merino Aff., ¶ 4.) Appellant recalled an occasion when one of his father's horses was shot by a bullet fired on the Club's property. (Merino Aff., ¶ 5.) He claims that the Club paid the veterinarian bills for the care of the animal. Neither Appellant nor his family members walk on or use portions of the Merino property closest to the Club's property line due to safety concerns. (Merino Aff., ¶ 6-7.)
 {¶ 5} Appellant states that the number of shots fired at the Club has increased dramatically over the past ten years based upon the noise coming from the Club. (Merino Aff., ¶ 10.) He has personally observed and heard shotgun pellets fall onto his property while guests of the Club were shooting on the skeet/trap range. (Merino Aff., ¶ 19.)
 {¶ 6} Appellant claims that, "[o]n one such visit, I discovered that the soil near the shotgun range was saturated with shotgun pellets to the point where they were clearly visible when picking up a handful of soil." (Merino Aff., ¶ 20.) This statement is confusing because it is not clear whether Appellant is talking about soil on the Merino property, the Club's property, or a neighboring property. *Page 4 
 {¶ 7} After acquiring his property, Appellant decided to investigate its development possibilities, including the possibility of a small allotment for residential homes. (Merino Aff., ¶ 11.) He retained a forester to evaluate and value the timber closest to the Club's property line. (Merino Aff., ¶ 1 3.) The forester discovered bullets lodged in the trees, which were marked with scarring and broken limbs due to bullets. (Merino Aff., ¶ 14.) The forester informed Appellant that sawmills would not purchase the timber because of the significant risk to their machinery created by the metal lodged in the trees. (Merino Aff., ¶ 15.) A second forester confirmed that the timber was defective due to the presence of the bullets. (Merino Aff., ¶ 16.)
 {¶ 8} There is a stream that flows from the Club property onto the Merino property, which Appellant intended to be the source of water for a pond in the proposed housing development. (Merino Aff., ¶ 22.) Tests conduced by Vadose Environmental, Inc., revealed that the level of contaminants in the soil and water was elevated. As a consequence, Appellant suspended his plans for the proposed housing development. (Merino Aff., ¶ 24-25.) EnviroServe estimated that remediation of the contaminated soil along the Club's property line would cost a minimum of $326,632.00 per acre. This figure does not account for any remediation of the stream. (Merino Aff., ¶ 26.)
 {¶ 9} In addition to his own affidavit, Appellant attached the affidavit of Daniel Clevenger to his omnibus opposition brief to the motions for summary judgment. Clevenger is the owner and operator of K.C.'s Rifle and Pistol Club, a shooting range located in the State of Ohio. (Clevenger Aff., ¶ 4.) Clevenger constructed his K.C.'s *Page 5 
Rifle and Pistol Club shooting range in 2004 in full compliance with the National Rifle Association Range Source Book and he is familiar with the standards of construction of shooting ranges.
 {¶ 10} Section 2, Chapter 13, Article 2, 2.01.1.1 states, "[t]he individual range builder must build a facility that does not adversely affect the surrounding areas." (Clevenger Aff., ¶ 9.) Clevenger conducted a site inspection of the Club property and range operations in 2006. (Clevenger Aff., ¶ 5.) During his inspection, he viewed and walked the property, specifically looking at the rifle range, pistol range, and skeet/trap shooting field. (Clevenger Aff., ¶ 6.)
 {¶ 11} According to Section 2, Chapter 2, 2.04 of the NRA Range Source Book, the range backstops should, "provide a primary impact area for the bullets after being fired at targets, keeping them from leaving the range proper under normal circumstances." (Clevenger Aff., ¶ 8.) However, the Club's range does not adequately protect adjacent property owners from stray bullets and ricochets, because the backstops do not meet the Source Book's standards. (Clevenger Aff., ¶ 7-8.)
 {¶ 12} More specifically, the rifle range backstop falls far below the NRA Range Source Book standard and consistently allows stray bullets to travel onto the Merino property, significantly increasing the risk of substantial harm to persons and property. (Clevenger Aff., ¶ 9.) The bullets that either penetrated trees or came to rest on the Merino property did so in a pattern that indicates that the bullets came from the Club. (Clevenger Aff., ¶ 12.) *Page 6 
 {¶ 13} The trial court found that the foregoing evidence was, "insufficient with respect to all Counts of the Complaint against all the Defendants," and that, "even assuming the validity of one or more causes of action, Plaintiffs damage claims are insufficient to permit this case to go forward." (5/2/2007 Judgment Entry, p. 4.)
 STANDARD OF REVIEW {¶ 14} An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court as set forth in Civ. R. 56(C). Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. When a court considers a motion for summary judgment, the facts must be taken in the light most favorable to the non-moving party. Id.
 {¶ 15} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party'sclaim." (Emphasis in original.) Dresher v. Burt (1996),75 Ohio St.3d 280, 296, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of *Page 7 
setting forth specific facts showing that there is a genuine issue for trial. Id., at 293, 662 N.E.2d 264. In other words, the nonmoving party must produce some evidence that suggests that a reasonable factfinder could rule in that party's favor. Brewer v. Cleveland Bd. of Edn.
(1997), 122 Ohio App.3d 378, 386, 701 N.E.2d 1023.
 ANALYSIS {¶ 16} Because Appellant's qualified nuisance and negligence claims essentially merge into one claim, the assignments of error will be addressed out of order for ease of review.
 ASSIGNMENT OF ERROR NUMBER 1 {¶ 17} "Plaintiff provided evidence, sufficient to sustain his burden of going forward, that the defendant Club conducted its activities in an improper manner or that the activities of the Club were unlawful, so as to constitute a nuisance."
 ASSIGNMENT OF ERROR 3 {¶ 18} "Plaintiff produced evidence that the defendant Club was negligent. The plaintiff therefore met its burden of showing a genuine issue of material fact."
 {¶ 19} "Nuisance" is defined as, "the wrongful invasion of a legal right or interest." Taylor v. Cincinnati (1944), 143 Ohio St. 426, 432,55 N.E.2d 724. "Wrongful invasion" encompasses the use and enjoyment of property or of personal rights and privileges. Id.
 {¶ 20} A "private nuisance" is, "a nontrespassory invasion of another's interest in the private use and enjoyment of land." Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 712,622 N.E.2d 1153. Unlike a public nuisance, a *Page 8 
private nuisance threatens only one or few persons. Taylor, supra, at 442, citing McFarlane v. Niagara Falls (1928), 247 N.Y. 340.
 {¶ 21} A private nuisance may be further designated as absolute or qualified:
 {¶ 22} "An absolute nuisance is based on either intentional conduct or an abnormally dangerous condition that cannot be maintained without injury to property, no matter what care is taken. A qualified nuisance is essentially a tort of negligent maintenance of a condition that creates an unreasonable risk of harm, ultimately resulting in injury."State ex rel. R.T.G., Inc. v. State, 98 Ohio St.3d 1, 2002-Ohio-6716,780 N.E.2d 998, ¶ 59.
 {¶ 23} Strict liability is imposed when an absolute nuisance is found.Taylor, supra, at paragraph two of the syllabus; State ex rel. Schoenerv. Hamilton Cty. Bd. of Commrs. (1992), 84 Ohio App.3d 794, 799,619 N.E.2d 2. In contrast, "qualified" nuisance is premised upon negligence.
 {¶ 24} A qualified nuisance arises from a failure to exercise due care. Taylor, at 436. Thus, "[t]he allegations of nuisance and negligence therefore merge, as the nuisance claims rely upon a finding of negligence." Allen Freight Lines, Inc. v. Consol. Rail Corp. (1992),64 Ohio St.3d 274, 276, 595 N.E.2d 855.
 {¶ 25} "In an action based upon the maintenance of a qualified nuisance, the standard of care is that care that a prudent man would exercise in preventing potentially or unreasonably dangerous conditions to exist; it is the same standard of care required of owners and occupiers of land toward business invitees." Kramer v. *Page 9 Angel's Path, L.L.C., 174 Ohio App.3d 359, 2007-Ohio-7099,882 N.E.2d 46, ¶ 23. The issue of reasonableness is an issue to be determined by the trier of fact. Id.
 {¶ 26} If a plaintiff proves the elements of nuisance, but fails to establish actual damages, the jury may award nominal damages.Capital Control, Inc. v. Sunrise Point, Ltd. 6th Dist. Nos. E-03-046, E-04-008, 2004-Ohio-6309, ¶ 38, citing Blevin v. Sorrell (1990),68 Ohio App.3d 665, 669, 589 N.E.2d 438; see also, Coe v. Pennington (April 6, 1983), 12th Dist. No. 470, *3 ("The award of nominal damages in a nuisance action where no actual damages are shown but a nuisance is found to exist was permitted in the case of Tootle v. Clifton (1871),22 Ohio St. 247, and has never been questioned.")
 {¶ 27} Some jurisdictions apply the "coming to the nuisance" doctrine as a complete defense to a nuisance action. That is, if the complainant obtains property that is already in some manner affected by a nuisance, the complainant may not bring suit. The prevailing American view, however, is that the defense is just one of several factors to be considered in determining whether a nuisance exists. Pre-Club Inc. v.Elliott Inv. Corp. (March 20, 1996), 9th Dist. No. 17347, *1, citing 4 Restatement of Law 2d, Torts (1979) 175, Section 840(D) ("The fact that the plaintiff has acquired or improved his land after a nuisance interfering with it has come into existence is not in itself sufficient to bar his action, but it is a factor to be considered in determining whether the nuisance is actionable."); Williams v. Oeder (1995),103 Ohio App.3d 333, 338, 659 N.E.2d 379. *Page 10 
 {¶ 28} In the case sub judice, the trial court entered summary judgment in favor of Appellee because, "activities which can be conducted safely with proper care and lawful activities are neither absolute nor qualified nuisances," citing State ex. rel. RTG, Inc., supra. The trial court concluded,"[t]here is no evidence before the Court that the Club conducted its activities in an improper manner or that the activities of the Club were themselves unlawful. Thus, the activities of the Club do not constitute either an absolute or qualified nuisance." (5/2/2007 Judgment Entry, p. 3.)
 {¶ 29} While the trial court correctly concluded that a shooting range is not an absolute nuisance because it "can" be maintained without injury to property, the same analysis is not appropriate under the theory of qualified nuisance. A "qualified nuisance" is a lawful act, "so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another." Metzger v. Pennsylvania, Ohio Detroit Rd. Co. (1946),146 Ohio St. 406, 66 N.E.2d 203, paragraph two of the syllabus. Therefore, the fact that it is possible to maintain a shooting range without injury does not mean it cannot be so negligently maintained as to constitute a qualified nuisance.
 {¶ 30} "A continuing trespass or nuisance occurs when the defendant's tortious activity is ongoing, perpetually creating fresh violations of the plaintiff's property rights. The damage caused by each fresh violation is an additional cause of action." Weir v. East Ohio GasCo., 7th Dist. No. 01 CA 207, 2003-Ohio-1229, ¶ 18. "Conversely, a permanent trespass, for which but one action lay, occurs when the *Page 11 
defendant's tortious act has been fully accomplished but injury to the plaintiff's estate from that act persists in the absence of further conduct by the defendant." Id.
 {¶ 31} Shooting ranges are subject to regulation by the State of Ohio. Pursuant to R.C. 1533.84, captioned "Adoption of Noise Rules," the chief of the division of wildlife is instructed to adopt rules establishing generally accepted standards for shooting ranges. The rules, "shall be no more stringent than national rifle association standards," and must include, "standards for public safety." R.C. 1533.84. Substantial compliance with the rules set forth in O.A.C. 501:31-29-03 immunizes owner/operators and users of a shooting range from civil liability and criminal prosecution for harm caused by noise from a shooting range. R.C. 1533.85.
 {¶ 32} However, the provisions of the Ohio Administrative Code are not limited exclusively to noise pollution. O.A.C. 1501:31-29-03(D) reads, in pertinent part, "Private and public shooting ranges should substantially comply with safety guidelines generally recognized and accepted by the national rifle association (NRA). Suggested safety guidelines are described or explained in great detail in "The NRA Range Source Book, Section I, Chapter 2, (1999 Edition)."
 {¶ 33} Although the violation of an administrative rule does not constitute negligence per se, it may be admissible as evidence of negligence. Chambers v. St. Mary's School (1998), 82 Ohio St.3d 563,568, 697 N.E.2d 198, 203, citing Stephens v. A-Able Rents Co. (1995),101 Ohio App.3d 20, 27-28, 654 N.E.2d 1315, 1320. It is generally accepted that regulations are admissible in evidence as bearing on the *Page 12 
question of the lack of ordinary care. Zimmerman v. St. Peter's CatholicChurch (1993), 87 Ohio App.3d 752, 757, 622 N.E.2d 1184.
 {¶ 34} Based upon the rule of law announced in Chambers, the Second District Court of Appeals in Zimmerman held that the violation of an administrative regulation can constitute negligence per se if the regulation provides a specific and detailed requirement, and does not require the intervention of human judgment or decision-making for compliance. Id., at 761-762, 622 N.E.2d 1184. Moreover, regulations requiring expert testimony to prove a violation are too general to form the basis of negligence per se. Id., at 762, 622 N.E.2d 1184.
 {¶ 35} Clevenger provided uncontroverted testimony that the range backstops do not comply with the NRA Range Source Book, in that they consistently allow stray bullets to travel onto the Merino property, significantly increasing the risk of substantial harm to persons and property. (Clevenger Aff., ¶ 9.) Clevenger further testified that the bullets that either penetrated trees or came to rest on the Merino property did so in a pattern that indicates that the bullets came from the Club. (Clevenger Aff., ¶ 12.)
 {¶ 36} As a consequence, the trial court's conclusion that no evidence was presented, "that the Club conducted its activities in an improper manner" is unwarranted. Although it does not appear that the requirements set forth in the NRA Range Source Book, and adopted by the Administrative Code, are sufficiently "specific and detailed" to establish negligence per se on the part of the Club, Clevenger's testimony does at least create a genuine issue of material fact as to *Page 13 
whether the Club breached its duty of care by failing to prevent bullets from escaping from its property.
 {¶ 37} Appellee contends that Appellant bought the property with full knowledge that the Club was operating on the adjacent property; that is, he came to the nuisance. As a consequence, Appellee argues that he should be barred from recovery. Appellant's childhood memories lend support to the Club's argument that when Appellant purchased the property in 1999, he was aware of the migration of the bullets from the Club onto the Merino property. On the other hand, Appellant stated that the number of shots fired at the Club has dramatically increased over the past ten years. While this testimonial evidence is not compelling, we are mindful of the rules regarding summary judgment. The record reflects that this evidence is sufficient to create at least a genuine issue of material fact as to whether an ongoing nuisance is actionable.
 {¶ 38} Appellant conceded at oral argument that the trial court correctly characterized his evidence of actual damages as hearsay. However, Appellant's failure to establish actual damages is not fatal to his qualified nuisance/negligence claim, because a jury may award nominal damages on a nuisance claim. Capital Control, Inc. v. SunrisePoint, Ltd., supra.
 {¶ 39} Summary judgment was not appropriate in this case as there exists genuine issues of material fact as to whether the configurations of the shooting ranges at the Club created, "potentially or unreasonably dangerous conditions to exist," Angel's Path, supra, and whether Appellant came to the nuisance or has seen *Page 14 
it escalate to the point of being actionable. Accordingly, Appellant's first assignment of error, as it applies to his claim of qualified nuisance, and his third assignment of error are sustained.
 ASSIGNMENT OF ERROR NUMBER 2: {¶ 40} "Plaintiff produced evidence sufficient to sustain his burden of going forward, that the defendant Club was trespassing on his property."
 {¶ 41} To state a cause of action in trespass a property owner must prove two essential elements: (1) an unauthorized intentional act, and (2) an intrusion that interferes with the owner's right of exclusive possession of her property. Brown, at 717, 622 N.E.2d 1153. The plaintiff bears the burden of proving all elements of a trespass claim.Chance v. BP Chemicals, Inc. (1996), 77 Ohio St.3d 17, 23,670 N.E.2d 985.
 {¶ 42} In Ohio, if the plaintiff proves the elements of trespass, he has a right to nominal damages without proof of actual damages.Fairfield Commons Condominium Assn. v. Stasa (1985), 30 Ohio App.3d 11,20, 506 N.E.2d 237. However, actual damages are a prerequisite to an award of punitive damages. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 82, 461 N.E.2d 1273.
 {¶ 43} Here, the Clevenger affidavit establishes that bullets from the Club have traveled onto the Merino property. Because the migration of bullets from the Club constitutes a "physical invasion" of the Merino property "by tangible matters," the facts of this case appear to fit the traditional definition of trespass. Brown, at 716, 622 N.E.2d 1153. However, Appellant has not produced any evidence to establish *Page 15 
that Appellee intentionally allowed bullets or hazardous substances to travel onto the Merino property.
 {¶ 44} Intentional conduct is an essential element of trespass. Restatement of Torts 2d, Section 158. Based upon Appellant's failure to establish any intentional acts by the Club, his second assignment of error is overruled.
 CONCLUSION {¶ 45} In summary, Clevenger's uncontroverted testimony establishes that bullets discharged at the Club traveled onto the Merino property. His testimony creates, at least, a genuine issue of material fact as to whether the Club committed a "wrongful invasion of a legal right or interest," Taylor at 432, 55 N.E.2d 724. Furthermore, even though Appellant has failed to establish actual damages, he may recover nominal damages should he prove the essential elements of his qualified nuisance/negligence claim. Therefore, Appellant's first assignment of error, as it applies to his claim of qualified nuisance, and his third assignment of error are sustained.
 {¶ 46} Appellant, however, has not produced any evidence to suggest that the Club has intentionally allowed bullets or hazardous substances to migrate onto the Merino property. As a consequence, Appellant cannot establish one of the elements of his trespass claim, and his second assignment of error must be overruled.
 {¶ 47} Because we have sustained Appellant's first and third assignments of error, the judgment of the trial court is hereby reversed as to Appellee, The Salem *Page 16 
Hunting Club. This matter is remanded to the trial court for further proceedings according to law and consistent with this Court's Opinion.
Donofrio, J., concurs.
 DeGenaro, P.J., concurs. *Page 1