Jane E. KNUTSON, Plaintiff,

v.

SIOUX TOOLS, INC., a wholly–owned subsidiary of Snap–On, Inc., Arlyn Wilson, and Milton Brown, Defendants.

No. C 95–4130–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Jan. 12, 1998.

Kendra M. Zirbel Olsen, Dean L. Meine, Souix City, IA, for Plaintiff.

Margaret M. Prahl of Heidman, Redmond, Fredregill, Patterson, Plaza & Dykstra, L.L.P., Souix City, IA, for Defendants.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

BENNETT, District Judge.

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................. 1116

II.  STANDARDS FOR SUMMARY JUDGMENT .................................. 1117

III.  FACTUAL BACKGROUND ..................................................... 1118
    A.  Undisputed Facts ........................................................ 1118
    B.  Disputed Facts ........................................................... 1118

IV.  LEGAL ANALYSIS ............................................................. 1119
    A.  Statute Of Limitations ................................................. 1119
    B.  Exclusivity Of Statutory Remedies ................................... 1120
        1.  Exclusivity of ICRA remedies .................................. 1120
        2.  Exclusivity of workers' compensation remedies ............... 1121
        3.  The "breach-of-contract" claim and exclusivity of statutory remedies .......................................................... 1122
    C.  Intentional Interference With Contract ............................. 1125

V.  CONCLUSION ................................................................. 1127

On a motion for partial summary judgment in this lawsuit arising from the plaintiff's employment, the defendants—the plaintiff's employer and co-workers—assert a variety of overlapping grounds, legal and factual, for judgment in their favor on all four of the plaintiff's state-law claims. The defendants assert expiration of the applicable statute of limitations, exclusivity of statutory remedies, and lack of genuine issues of material fact on essential elements of claims. Thus, the re-

sourcefulness of the plaintiff in pressing several different claims to assert the wrongfulness of essentially the same conduct is matched only by the resourcefulness of the defendants in pressing several different ways to dispose of all of the plaintiff's state-law claims in their favor. The court must sort the wheat from the chaff and determine whether any of the plaintiff's state-law claims may proceed to trial with her federal claims.

## I. INTRODUCTION

Plaintiff Jane E. Knutson filed this lawsuit on December 8, 1995, alleging a sexually hostile environment and other claims against her current employer, defendant Sioux Tools, Inc.,[1] a co-worker, defendant Arlyn Wilson, and her immediate supervisor, defendant Milton Brown. Knutson, who has been an employee of Sioux Tools since 1979, is employed in the company's Engineering Department, where she performs drafting and related work. However, she alleges that, from 1979 at least until 1992, she was subjected to a sexually hostile work environment and other workplace torts, and that, from 1990 to the present, she was subjected to unequal pay based on her sex.

More specifically, Knutson has brought the following six claims—two federal and four state—against her current employer and the other defendants arising from her employment. In Count I, Knutson alleges against all defendants creation of a sexually hostile work environment in violation of Title VII, 42 U.S.C. § 2000e-2. Count II alleges that Sioux Tools violated the Equal Pay Act, 29 U.S.C. § 206(d), by paying Knutson less than male employees for performing work requiring equal skills, effort, and responsibility, and performed under the same or similar working conditions. The remaining four claims are supplemental state-law claims. Count III alleges intentional infliction of emotional distress by all defendants individually and as agents of Sioux Tools. Count IV alleges breach of an oral contract by Sioux Tools for an alleged failure to provide Knutson with a physically safe and non-discriminatory work environment. Count V is an assault claim against defendants Arlyn Wilson and Sioux Tools. Finally, Count VI alleges intentional interference with Knutson's contractual relationship with Sioux Tools by defendants Wilson and Brown.

On November 7, 1997, the defendants moved for partial summary judgment, asserting that they are entitled to judgment, on various grounds, on Knutson's four supplemental state-law claims. The defendants contend that Knutson's claims of intentional infliction of emotional distress, breach of contract, and interference with contract are all "preempted" by the Iowa Civil Rights Act (ICRA), Iowa Code Ch. 216, that is, that the ICRA is the exclusive remedy for the discriminatory conduct upon which these claims are based. Defendants Wilson and Sioux Tools assert that Knutson's exclusive remedy for her assault claim is under Iowa's workers' compensation act, Iowa Code Ch. 85. The defendants also seek summary judgment on Knutson's breach-of-contract claim, if the ICRA does not provide the exclusive remedy for the wrong alleged, on the alternative ground that the claim in reality alleges breach of the implied covenant of good faith and fair dealing, and thus asserts a claim never recognized by the Iowa Supreme Court in the employment context. As an alternative ground for summary judgment on Knutson's claims of intentional infliction of emotional distress and assault, the defendants contend that these claims are barred by the applicable two-year statute of limitations, because these claims are based on allegations of wrongdoing prior to June of 1992, but Knutson did not file suit until December of 1995. Finally, as an alternative ground for summary judgment on Knutson's claim of interference with her contract by Wilson and Brown, those defendants contend that there is no evidence that any interference was intentional, and furthermore, Knutson's employment has not been terminated or otherwise interfered with.

Knutson resists summary judgment on any of her state-law claims. She contends that there are genuine issues of material fact on the statute-of-limitations question, because wrongful conduct continued after May of 1992. She also argues that the Iowa Civil Rights Act does not provide the exclusive remedy for any of her tort claims, because

---

1. Defendant Sioux Tools, Inc., is a wholly-owned subsidiary of Snap-On, Inc.

those claims do not depend upon a finding of discrimination, even if they are based on conduct also alleged to be discriminatory. She also appears to reject the notion that her breach-of-contract claim alleges breach of the implied covenant of good faith and fair dealing, and hence does not assert a claim the Iowa Supreme Court has never recognized. Finally, Knutson contends that there are genuine issues of material fact as to whether Brown and Wilson interfered with her opportunities for promotions at Sioux Tools.

Neither party requested oral arguments on the defendants' motion for partial summary judgment. Consequently, with a jury trial scheduled to begin on February 23, 1998, the court turns to resolution of the motion for summary judgment based on the record and written arguments submitted by the parties. Before considering the undisputed and disputed facts upon which the parties rely, the court will discuss briefly the standards for summary judgment, because it is through the lens created by those standards that the facts in the record must be viewed.

## II. STANDARDS FOR SUMMARY JUDGMENT

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED. R. CIV. P. 56 in a number of recent decisions. *See, e.g., Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Center,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here.

Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(b) & (c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). "An issue of material fact is genuine if it has a real basis in the [summary judgment] record." *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 395.

Although the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases," *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Medical Ctr.,* 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford* ); *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 615 (8th Cir.1997) (quoting *Crawford* ); *Chock v. Northwest Airlines, Inc.,* 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination

cases," citing *Crawford*); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir.1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.*, 45 F.3d 262 (8th Cir.1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand*, 827 F.2d at 364), and summary judgment is therefore appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion," *Johnson*, 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch*, 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson*, 931 F.2d at 1244); *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244), none of the claims upon which Sioux Tools seeks summary judgment is in fact an employment discrimination claim. Rather, each alleges a state-law tort, albeit one arising in an employment context. Therefore, only the standards generally applicable to motions for summary judgment, not the special cautions applicable in employment discrimination cases, are applicable here.

### III. FACTUAL BACKGROUND

#### A. Undisputed Facts

The parties agree that the following facts are undisputed. Plaintiff Jane Knutson began working for Sioux Tools in 1979 as a drafter in the company's engineering department and continues to be so employed today. Knutson does not have a written contract of employment with Sioux Tools. Knutson did not apply for, and did not receive, any promotions, although other employees were occasionally promoted. However, Knutson has received annual pay raises during her employment. Defendant Arlyn Wilson began his employment with Sioux Tools in 1956 and also continues to be employed by Sioux Tools today. During Knutson's employment, Arlyn Wilson and then Milton Brown were her immediate supervisors. Although Wilson and Brown evaluated Knutson's work, neither had the direct authority to authorize wage increases for her.

Knutson alleges that she was subjected to teasing by Wilson and other Sioux Tools employees from 1979 to May of 1992 and to "knocking" on the head by Wilson between 1985 and at least May of 1992. The head "knocking" complained of usually occurred when Knutson did something she called "stupid." The parties agree that the "knocking" and other conduct to which Knutson objects occurred at work at Sioux Tools during work hours. Knutson asserts that she made various complaints to Sioux Tools personnel about such conduct, but it is undisputed that Knutson first made a complaint to Sioux Tools' human resources department in May of 1992. Ronette Powell of the human resources department investigated Knutson's complaint, treating it as a complaint of sexual harassment. Although Powell determined that the conduct of co-workers did not rise to the level of sexual harassment, Powell directed Wilson and others to correct their behavior.

The parties dispute precisely when the head "knocking" ended, but they agree that after Powell's investigation and corrective action on May 29, 1992, it slowed and eventually ceased. Knutson also cannot remember any comments of a sexual nature that were made after May 29, 1992. Nevertheless, Knutson filed complaints with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission on July 27, 1992, in which she alleged sexual harassment by Wilson and Brown from 1979 until May 29, 1992, and unequal pay from July of 1990 until the date the complaint was filed. Knutson's complaint did not allege retaliation. Knutson made no further complaints to Ronette Powell.

#### B. Disputed Facts

Knutson contends that the following facts are in dispute. The questions to be addressed below, in the court's legal analysis, are whether these disputes have "a real basis in the record," *see Hartnagel*, 953 F.2d at 395, and whether they are material under the governing law, such that they preclude summary judgment on Knutson's state-law claims. *See, e.g.*, FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 248; *Beyerbach*, 49 F.3d at 1326; *Hartnagel*, 953 F.2d at 395.

Knutson disputes that the head "knocking" ceased in 1992, although she admits that it tapered off and eventually ceased. Knutson

cannot recall precisely when any such incidents occurred after May of 1992, or precisely how long, if at all, they continued after that date. She also admits that she does not remember any specific comments of a sexual nature after May 29, 1992, although she disputes that sexual harassment or discrimination necessarily ended at that time. Knutson does not dispute that she made no further complaints to Ronette Powell or the human resources department, but she contends that she continued to complain directly to Wilson and Brown about their behavior after May of 1992, and she filed her civil rights complaint with the state and federal agencies in July of 1992. Knutson disputes Sioux Tools' contention that the conduct she complained of to Ronette Powell ceased after Powell investigated and admonished Wilson and others to correct their behavior.

Knutson also disputes Sioux Tools' contention that neither Brown nor Wilson could directly influence her promotional opportunities. To the contrary, Knutson asserts that Brown and Wilson prevented her from receiving promotions by singling her out for heightened scrutiny of her work on the basis of her sex. She also contends that she was prevented from obtaining promotions by the company's practice of promoting men over women. Thus, she states that she did not apply for promotions, because she felt that the attitude already demonstrated towards women meant she would have no chance of being promoted if she did apply.

#### IV. LEGAL ANALYSIS

The defendants seek summary judgment on Knutson's state-law tort claims on three sometimes overlapping grounds: expiration of the applicable statute of limitations, exclusivity of statutory remedies, and, finally, lack of genuine issues of material fact on essential elements of claims.

#### A. Statute Of Limitations

The defendants seek summary judgment on Knutson's claims of intentional infliction of emotional distress and assault on the ground that those claims are barred by the applicable two-year statute of limitations. They argue that it is undisputed that these claims are based on allegations of wrongdoing prior to June of 1992, but Knutson's suit was not filed until December of 1995. Knutson contends that her deposition testimony generates a genuine issue of material fact as to whether the wrongful conduct to which she was subjected continued after May 29, 1992.

■ The defendants are correct that the statute of limitations applicable to Knutson's claims of intentional infliction of emotional distress and assault is Iowa Code § 614.1(2), which establishes a two-year limitations period for actions "founded on injuries to the person." *See, e.g., Borchard v. Anderson,* 542 N.W.2d 247, 249 (Iowa 1996) (a suit grounded in claims of assault, battery, and intentional infliction of emotional distress was subject to the limitations period stated in Iowa Code § 614.1(2), citing *Rodgers v. Pennsylvania Life Ins. Co.,* 539 F.Supp. 879, 885 (S.D.Iowa 1982)); *Hegg v. Hawkeye Tri-County REC,* 512 N.W.2d 558, 559 n. 1 (Iowa 1994) (a claim for damages for emotional distress was "subject to the two-year statute of limitations in Iowa Code § 614.1"); *Speer v. Blumer,* 483 N.W.2d 599, 600 (Iowa 1992) (a civil claim for damages for assault, after the defendant pleaded guilty to assault in violation of Iowa Code § 708.2(2), was subject to the two-year statute of limitations in Iowa Code § 614.1(2)). Thus, the conduct giving rise to the emotional distress and assault claims must have occurred not later than December 8, 1993, two years prior to the filing of Knutson's suit, for those claims to be timely.

■ Knutson's deposition testimony, which Knutson offers to establish the timeliness of her emotional distress and assault claims, is equivocal at best about precisely when the head "knocking" and other conduct ended. *See* Deposition of Jane E. Knutson, pp. 181–84, 193–94, 195, 216. However, there is not the merest hint in any portion of the summary judgment record to which the plaintiff has directed the court's attention that any of this conduct continued after December 8, 1993. *See Hartnagel,* 953 F.2d at 395 ("[a]n issue of material fact is genuine if it has a real basis in the record," citing *Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87). "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material

facts." *Matsushita,* 475 U.S. at 586. Knutson was therefore required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324; *Rabushka ex rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Knutson has not done so here on whether any conduct upon which these claims are based fell within the applicable limitations period.

Therefore, the defendants are entitled to summary judgment on Knutson's claims of intentional infliction of emotional distress (Count III) and assault (Count V), because those claims are time-barred under the applicable two-year statute of limitations, Iowa Code § 614.1(2). The court will nonetheless consider the defendants' alternative arguments for summary judgment on these claims as well.

### B. Exclusivity Of Statutory Remedies

### 1. Exclusivity of ICRA remedies

Sioux Tools contends that Knutson's claims of intentional infliction of emotional distress, breach of contract, and interference with contract are all "preempted" by the ICRA, Iowa Code Ch. 216, because the ICRA is the exclusive remedy for the discriminatory conduct upon which these claims are based. Knutson counters that she does not need to prove discrimination to prove any of these claims; therefore, they are not "preempted" by the ICRA.

■ As this court has explained on four occasions, Iowa Code Ch. 216, provides the exclusive remedy for discriminatory conduct. *See Thompto v. Coborn's, Inc.,* 871 F.Supp. 1097, 1108–09 (N.D.Iowa 1994) (citing *Greenland v. Fairtron Corp.,* 500 N.W.2d 36, 37 (Iowa 1993)); *O'Bryan v. KTIV Television,* 868 F.Supp. 1146, 1161 (N.D.Iowa 1994) (same), *aff'd in pertinent part, rev'd in part,* 64 F.3d 1188 (8th Cir.1995); *Thomas v. St. Luke's Health Sys., Inc.,* 869 F.Supp. 1413, 1438–39 (N.D.Iowa 1994) (same), *aff'd,* 61 F.3d 908, 1995 WL 416214 (8th Cir.1995) (table opinion); *Chester v. Northwest Iowa Youth Emergency Servs. Ctr.,* 869 F.Supp. 700, 712–13 (N.D.Iowa 1994) (same). However, Iowa Code Ch. 216 is *not* the exclusive remedy if the claims are separate and independent, and therefore incidental, causes of action. *Id.* at 1109 (again citing *Greenland,* 500 N.W.2d at 38).

■ Knutson does base her claims of intentional infliction of emotional distress, breach of contract, and interference with contract on conduct that is allegedly discriminatory: the same conduct that allegedly created a sexually hostile environment, sexual comments and teasing. To the extent these three claims are based on discriminatory conduct, Iowa Code Ch. 216 may provide the exclusive remedy. *Greenland,* 500 N.W.2d at 37. However, the court notes that these three claims are not based solely on allegedly discriminatory conduct, but also upon allegedly assaultive conduct, such as the head "knocking," that is or may be wrongful entirely independently of whether it is also discriminatory. *Compare id.* at 38–39 (claims of assault and battery were not "preempted" by Iowa Code Ch. 216, formerly Iowa Code Ch. 601A, because, "[u]nlike the claim for intentional infliction of emotional distress, Greenland's claims for assault and for battery are not bound up in her discrimination complaints," even though the assault and battery claims were based on sexual touching). Claims of intentional infliction of emotional distress and breach of contract that are based on conduct that is assaultive, whether or not it is also discriminatory, therefore are separate and independent causes of action that may be maintained in addition to claims pursuant to Iowa Code Ch. 216. *Id.* at 38.

■ Furthermore, Iowa Code Ch. 216 is not necessarily the exclusive remedy for a claim of intentional interference with a contract. The Iowa Supreme Court has held that the language in Iowa Code Ch. 216 that makes it unlawful for a person to discharge "or otherwise discriminate in employment," Iowa Code § 216.6(1)(a), "pertains only to employers." *Grahek v. Voluntary Hosp. Coop.,* 473 N.W.2d 31, 35 (Iowa 1991). As the Iowa Supreme Court explained in *Grahek,* "acts of third parties are not 'unfair or discriminatory practice[s]' for purposes of sec-

tion [216.16(1)], and actions against such third parties are not preempted by chapter [216]." *Id.* Therefore, the Iowa Supreme Court reversed summary judgment on a tortious interference claim, which had been granted on the ground that the claim was "preempted" by Iowa Code Ch. 216, because it was "not entirely clear from the record whether [the defendant] was·a party to the employment contract." *Id.* at 35–36. Similarly here, it is not entirely clear from the record whether Brown and Wilson are or effectively are parties to Knutson's contract, a matter to which the court will return in its discussion of the tortious interference claim in subsection IV.C. below.

Consequently, the defendants are *not* entitled to summary judgment on Counts III (emotional distress) or IV (breach of contract), on the ground that Iowa Code Ch. 216 provides the exclusive remedy for the wrongs alleged in these claims, at least to the extent these claims rely on assaultive conduct, or on Count VI (interference with contract), because there are genuine issues of material fact as to whether chapter 216 provides the exclusive remedy for tortious interference claims against them. Nonetheless, the claim of intentional infliction of emotional distress is time-barred, as explained in the preceding subsection, and the breach-of-contract and tortious interference claims may be subject to other bars, considered below.

### 2. *Exclusivity of workers' compensation remedies*

■ Sioux Tools and defendant Wilson assert the exclusivity of remedies under Iowa's workers' compensation act as a bar to Knutson's assault claim against them as an alternative to their statute-of-limitations defense to that claim. Knutson failed to respond to this argument.

The Iowa workers' compensation act requires employers covered by the act to provide compensation according to the terms of the act "for any and all personal injuries sustained by an employee arising out of and in the course of the employment." Iowa Code § 85.3(1). The exclusivity provision of the Iowa workers' compensation act provides, in pertinent part, as follows:

> The rights and remedies provided under this chapter ... for an employee on ac-

count of injury ... shall be the exclusive and only rights and remedies of such employee ... *at common law or otherwise,* on account of such injury... against:
>
> 1. the employee's employer; or
>
> 2. any other employee of such employer, provided that such injury ... arises out of and in the course of such employment and is not caused by the other employee's gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another.

Iowa Code § 85.20 (emphasis added).

The Iowa Supreme Court has held that, in the circumstances stated in Iowa Code § 85.3(1), assaults by co-employees fall within the scope of the workers' compensation act. *See Sheerin v. Holin Co.,* 380 N.W.2d 415, 417 (Iowa 1986) (an assault by a co-employee falls within the exclusive scope of the workers' compensation act if injury or death occurred both "in the course of" and "arose out of" the employment, citing Iowa Code §§ 85.3 and 85.20); *Cedar Rapids Community Sch. v. Cady,* 278 N.W.2d 298, 302 (Iowa 1979) (*en banc*) (concluding that an on-the-job assault by a co-worker as the result of an "insane delusion" arose out of and in the course of employment within the meaning of Iowa Code § 85.3(1)). In *Sheerin,* the Iowa Supreme Court explained these requirements as follows:

> The requirement that in order to fall within the scope of the workers' compensation act an injury or death must occur "in the course of" the employment refers to time, place and circumstances of injury. *Buehner v. Hauptly,* 161 N.W.2d 170, 171 (Iowa 1968). The additional requirement that the injury or a death "arise out of" the employment relates to the cause and origin of the injury. *McClure. v. Union, et al., Counties,* 188 N.W.2d 283, 287 (Iowa 1971). The "arising out of" requirement is satisfied by showing a causal relationship between the employment and the injury, but the "in the course of" requirement is not. Nor is it always enough that the injury occur at the employer's place of business during working hours in order to be incurred "in the course of" employment. *If an employee deviates sufficiently from the*

*line of duty so that his or her actions are foreign to the employer's work, this may take the employee outside the course of employment. Crees v. Sheldahl Telephone Co.,* 258 Iowa 292, 139 N.W.2d 190, 195 (1965); *Walker v. Speeder Machinery Corp.,* 213 Iowa 1134, 1145–46, 240 N.W. 725, 730 (1932).

*Sheerin,* 380 N.W.2d at 417 (emphasis added). In *Sheerin*—a case in which a motel employee was stabbed to death at the motel during working hours by another employee—the Iowa Supreme Court found that there were no genuine issues of material fact that the "arising out of" element was satisfied by uncontradicted evidence that the decedent was "on duty" at the time of her death. *Id.* However, the court found that genuine issues of material fact on the "in the course of" element precluded summary judgment in favor of the employer on its contention that the employee's exclusive remedy against it was under the workers' compensation act. *Id.* The court wrote,

> The record in support of the motion is largely silent concerning the circumstances at and immediately prior to decedent's injury and death. For this reason, the record does not negate the possibility that the attack was preceded by a departure from the course of employment. This circumstance precludes the granting of summary judgment on this jurisdictional issue.

*Sheerin,* 380 N.W.2d at 417–18. By way of contrast, in *Cedar Rapids Community Sch. v. Cady,* 278 N.W.2d 298 (Iowa 1979) (*en banc*), the Iowa Supreme Court concluded that an assault by a co-employee resulting from an "insane delusion" was "equally a rational consequence of a hazard connected with the employment" as an injury from "negligence or chance mishap." *Cady,* 278 N.W.2d at 303.

On the record in the case now before this court, there is no indication that Wilson's alleged assaults on Knutson resulted from his "deranged" or "deluded" state of mind, such that those assaults would necessarily fall within the exclusive scope of the workers' compensation act. *Compare Cady,* 278 N.W.2d at 303. Furthermore, although this court finds that the present record generates no genuine issue of material fact that the head "knocking"—the basis for the assault

claim—"arose out of" Knutson's employment, because there was a causal relationship between the employment and the injury, there are genuine issues of material fact as to whether the "in the course of" element has been satisfied. *See Sheerin,* 380 N.W.2d at 417. Simply showing that the injury occurred at the place of business during working hours, which is what the record here undisputably shows, simply is not enough to prove the "in the course of" element. *Id.* "Knocking" a co-employee on the head when she has been "stupid" may well constitute a departure from the course of employment, because it deviates sufficiently from the line of duty to make the action foreign to Sioux Tools' work. *Cf. id.* Furthermore, there are genuine issues of material fact that such conduct constitutes "gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another," which would also remove Wilson's conduct from the protection of the exclusive remedies provision of the Iowa workers' compensation act. *See* Iowa Code § 85.20(2) (stating that the workers' compensation act is not the exclusive remedy against a co-employee for gross negligence as defined).

Thus, neither Sioux Tools nor Wilson is entitled to summary judgment on Knutson's assault claim on the ground that the claim falls within the exclusive scope of the workers' compensation act. However, the court concluded above that the assault claim was time-barred. Thus, Knutson cannot assert her assault claim here even if the workers' compensation act does not provide Knutson's exclusive remedy against Wilson and Sioux Tools for assaults in the workplace by a co-worker.

### 3. The "breach-of-contract" claim and exclusivity of statutory remedies

The defendants also raise the exclusivity of statutory remedies as a bar to Knutson's "breach-of-contract" claim, although not as their first line of attack on that claim. The defendants characterize Knutson's breach-of-contract claim—which is based on a failure to provide a safe working environment free from discrimination and assault—as a claim for breach of the implied covenant of good

faith and fair dealing, and they assert that the Iowa Supreme Court has never recognized a "breach-of-good-faith" claim in the employment context. They contend, in the alternative, that if the claim so characterized could be recognized, it would fall within the exclusive remedies of the ICRA, because it is based on the same conduct that gives rise to the sexually hostile environment claim.

■ The defendants are correct that the Iowa Supreme Court has never recognized a claim for breach of implied covenant of good faith and fair dealing in the employment context. *See, e.g., Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 204 (Iowa 1997) ("In Iowa, the tort of breach of implied covenant of good faith and fair dealing has never been recognized in the employment context. *Grahek v. Voluntary Hosp. Coop. Ass'n*, 473 N.W.2d 31, 34 (Iowa 1991). In recent years, we have continued to reject the doctrine. *See Huegerich [v. IBP, Inc.]*, 547 N.W.2d [216,] 220 [(Iowa 1996)]; *Anderson [v. Douglas & Lomason Co.]*, 540 N.W.2d [277,] 282 [(Iowa 1995)]; *French v. Foods, Inc.*, 495 N.W.2d 768, 771 (Iowa 1993). We see no reason to reconsider our position."). The defendants are also correct that, to the extent the breach of the implied covenant is based on discrimination, the Iowa Supreme Court has held that a cause of action alleging breach of the covenant would be "preempted" by the ICRA. *See Grahek*, 473 N.W.2d at 34 (refusing to recognize a claim for breach of the covenant of good faith and fair dealing in the employment situation and holding that, where the only act of bad faith alleged was age discrimination, the ICRA "preempted" the bad faith claim).

■ Whichever way Knutson's claim in Count IV is characterized, as the court noted above, it is based in part on failure to prevent discrimination. To that extent, the ICRA provides Knutson's exclusive remedy. *See Greenland*, 500 N.W.2d at 37. But her claim is not based solely on allegedly discriminatory conduct; rather, it is also based upon allegedly assaultive conduct, such as the head "knocking," which is or may be wrongful independently of whether it is also discriminatory. Thus, to the extent Knutson's "breach-of-contract" claim alleges failure to provide a work environment free from as-saults, the ICRA would *not* be Knutson's exclusive remedy for the wrong alleged.

■ Furthermore, the court's finds that the defendants—and for that matter, the plaintiff—have not properly characterized the "breach-of-contract" claim alleged here. First, the court is unwilling to accept the defendants' leap of faith that the cause of action asserted is for breach of the implied covenant of good faith and fair dealing. In *Fogel v. Trustees of Iowa College*, 446 N.W.2d 451 (Iowa 1989), the Iowa Supreme Court relied on the formulation of the covenant found in Restatement (Second) of Contracts § 205 as an example of the covenant implied into other kinds of contracts. *Fogel*, 446 N.W.2d at 456. Comments to that section of the Restatement explain that "good faith" means "honesty in fact in the conduct or transaction concerned," and "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party," adding further that, although the meaning of "good faith" varies somewhat with the context, good faith "excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." Restatement (Second) of Contracts § 205, cmt. *a*. "Good faith performance" is further defined to exclude "bad faith" such as "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Id.* at cmt. *d*. Nothing in the Restatement formulation of the covenant, however, says anything whatever about an employer's obligations to maintain a safe workplace.

Rather, it appears that the common-law imposes upon all employers the duty to maintain a safe workplace—including the specific duty to maintain a workplace where employees are free from assaults by co-workers or third parties. *See, e.g., Daniels v. Thistledown Racing Club, Inc.*, 103 Ohio App.3d 281, 659 N.E.2d 346, 348 (1995) (in a case in which a horse trainer was raped at the racing club, the court held that the statutory duty of an employer to furnish employment which is

safe for the employee and to do everything else reasonably necessary to protect the life, health, safety, and welfare of the employee, "is no more than a codification of the common-law duty" of an owner or occupier of premises to invitees, and the statute was applicable to the plaintiff), *dismissed, appeal not allowed,* 74 Ohio St.3d 1404, 655 N.E.2d 184, 1995 WL 577904 (1995); *Brooks v. National Convenience Stores, Inc.,* 897 S.W.2d 898, 902 (Tex.App.—San Antonio 1995) (in an action by a convenience store employee after receiving injuries during an armed robbery at the store where he worked, the court held that employers have a non-delegable duty of ordinary care to provide a safe workplace for their employees). *But see Caballero v. First Albany Corp.,* 237 A.D.2d 800, 654 N.Y.S.2d 866, 867 & 869 (1997) (the duty to provide a workplace safe from assault—there alleged to be assault by a co-employee who blew smoke in the plaintiff's face—was statutory, citing Labor Law § 200); *Meyer v. Shearson Lehman Bros., Inc.,* 211 A.D.2d 541, 621 N.Y.S.2d 346 (1995) (a broker's cause of action against his employer for failure to provide a safe workplace was barred by the statute of limitations applicable to battery actions, because he could not avoid the statute of limitations by calling what was properly a battery action an action for negligence or breach of contract). Negligent breach of such a common-law duty gives rise to a tort cause of action.

██ But there are two reasons the defendants *are* entitled to summary judgment on

Knutson's claim of failure to provide a safe workplace, properly characterized as a tort, not a breach-of-contract claim. First, the Iowa workers' compensation act would provide the exclusive remedy for the wrong alleged. Iowa Code § 85.20 ("The rights and remedies provided under this chapter ... for an employee on account of injury ... shall be the exclusive and only rights and remedies of such employee ... *at common law or otherwise,* on account of such injury."). *See also Robinson v. Poured Walls of Iowa, Inc.,* 553 N.W.2d 873, 875 (Iowa 1996) (an employee injured while performing excavation work to repair a clogged sewer pipe originally brought suit against his employer alleging breach of a duty under Restatement (Second) of Torts § 343 (1965) to provide a safe workplace, but later conceded that his exclusive remedy for breach of that duty was for workers' compensation benefits in accordance with Iowa Code § 85.20); *and compare Brooks,* 897 S.W.2d at 905–06 (an employee's exclusive remedy against his employer for failure to maintain a safe workplace arising from a workplace assault was under the workers' compensation act); *Price v. Circle K,* 649 So.2d 1210, 1211–12 (La.Ct.App.1995) (workers' compensation was the exclusive remedy for an employer's alleged failure to maintain a safe workplace where the employee was beaten and robbed while at work).[2]

Second, the claim, properly construed as a tort action, not a breach-of-contract action, is barred by the same two-year statute of limitations that bars Knutson's intentional inflic-

---

**2.** The court does not agree that a claim of failure to provide a safe workplace arising from an assault in the workplace is necessarily the same as a claim for assault, *contra Meyer,* 211 A.D.2d at 542–43, 621 N.Y.S.2d at 348 (concluding that a broker's cause of action against his employer for failure to provide a safe workplace was barred by the statute of limitations applicable to battery actions, because he could not avoid the statute of limitations by calling what was properly a battery action an action for negligence or breach of contract), or that such a claim could fall within the exceptions for workers' compensation coverage for gross negligence or willful acts of co-employees or others. *See* Iowa Code § 85.20; Iowa Code § 85.16(3) (no coverage for "willful act of a third party directed against the employee for reasons personal to such employee"). *See also Price,* 649 So.2d at 1211–12 (workers' compensation was the exclusive remedy for an employer's alleged failure to maintain a

safe workplace where the employee was beaten and robbed while at work; the "intentional acts" exception to workers' compensation coverage was never intended to make employers liable in tort for random, independent, intervening, intentional acts of unrelated, unknown third parties). The "wrong" upon which the claim is based is not the "wrong" of injury by a co-employee or third party perpetrating the assault, but the "wrong" of the *employer* in failing to prevent the assault. *Contra Meyer,* 211 A.D.2d at 542–43, 621 N.Y.S.2d at 348. Thus, only the *employer's* conduct, not that of the third party or co-employee guilty of the actual assault, should ever be at issue on such a claim. This is another way of saying that the court believes that a claim of failure to provide a safe work environment, whether based on assault or accident, would fall within the exclusive scope of Iowa's workers' compensation act, Iowa Code Ch. 85.

tion of emotional distress and assault claims, Iowa Code § 614.1(2), because such a claim is one "founded on injuries to the person." Iowa Code § 614.1(2). Again, there is not the merest hint in any portion of the summary judgment record to which the plaintiff has directed the court's attention that Sioux Tools failed to provide a safe workplace after December 8, 1993. *See Hartnagel*, 953 F.2d at 395 ("[a]n issue of material fact is genuine if it has a real basis in the record," citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87). Knutson has failed to designate "specific facts showing that there is a genuine issue for trial" on whether conduct on which the failure to provide a safe workplace claim is based continued into the limitations period. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324; *Rabushka*, 122 F.3d at 562; *McLaughlin*, 50 F.3d at 511; *Beyerbach*, 49 F.3d at 1325.

Therefore, the defendants are entitled to summary judgment on Count IV of Knutson's complaint, because (1) to the extent her claim of failure to provide a safe workplace is founded on failure to prevent discrimination, the ICRA provides her exclusive remedy; (2) to the extent the claim is based on failure to prevent assault, the Iowa workers' compensation act provides her exclusive remedy, and (3) the claim is barred by the applicable two-year statute of limitations, Iowa Code § 614.1(2), because the action, however denominated, is one "founded on injuries to the person."

### C. Intentional Interference With Contract

■ Finally, defendants Wilson and Brown have moved for summary judgment on Knutson's claim of intentional interference with her contract of employment with Sioux Tools on the alternative ground that Knutson cannot generate any genuine issues of material fact on essential elements of the claim. They contend that the undisputed evidence shows that any interference was not intentional and that Knutson's employment has not been terminated or otherwise interfered with. Knutson counters that there are genuine issues of material fact as to whether Brown and Wilson interfered with her opportunities for promotions at Sioux Tools.

The court observed above that summary judgment could not be entered on this claim on the ground that it is "preempted" by the ICRA, because the ICRA provides the exclusive remedy for wrongs by an employer, and there are genuine issues of material fact as to whether Wilson and Brown are third parties to Knutson's contract with her employer. *See Grahek*, 473 N.W.2d at 35–36. That issue deserves some further discussion here.

The status of Wilson and Brown as employees of Sioux Tools "does not ipso facto make [them] part[ies] to any contracts [Sioux Tools] might enter, employment or otherwise." *Hunter v. Board of Trustees*, 481 N.W.2d 510, 518 (Iowa 1992). However, in *Hunter*, the Iowa Supreme Court found that the court "had recognized a cause of action for tortious interference with an employment contract where an employee discharges another employee in violation of the employment contract and the discharge is found to exceed the qualified privilege to which officers and directors are entitled." *Hunter*, 481 N.W.2d at 518 (citing *Wolfe v. Graether*, 389 N.W.2d 643, 658–60 (Iowa 1986) (upholding jury verdict on tortious interference claim against officers of the company, because there were facts from which the jury could have concluded that the officer in question exceeded his qualified privilege)). On the present record, it does not appear that either Wilson or Brown is an officer of Sioux Tools. Yet, quite recently, the Iowa Supreme Court affirmed summary judgment on a tortious interference claim, because the plaintiff employee had alleged that all defendants were either his employers or their agents—specifically, owners, supervisors, and managers—and thus were not third parties to the plaintiff's employment contract. *See Harbit v. Voss Petroleum, Inc.*, 553 N.W.2d 329, 331 (Iowa 1996). The Iowa Supreme Court cited *Grahek*, as this court has, for the proposition that this tort "can only be committed by a third party, not a party to that contract." *Id.* (citing *Grahek*, 473 N.W.2d at 35). In *Harbit*, the court declined to recognize an exception to that rule, previously noted but not adopted in *Klooster v. North Iowa State Bank*, 404 N.W.2d 564, 570 (Iowa 1987), because the exception was not implicated under the facts.

The exception to liability of officers for tortious interference with an employee's contract of employment discussed in *Klooster* is the case in which the defendant is a discontented promisee seeking to avoid his own contractual obligations to the plaintiff by preventing the plaintiff from performing. *Klooster*, 404 N.W.2d at 570. That exception is not present here. However, Wilson and Brown were only at times Knutson's supervisors, *see Harbit*, 553 N.W.2d at 331 (owners, managers, and supervisors are not third parties to an employee's employment contract, and thus cannot be liable in most circumstances for tortious interference with the employment contract), and at other times were merely co-employees. *See Hunter*, 481 N.W.2d at 518 (co-employees are not ipso facto parties to another employee's employment contract with the employer). It is unclear from the record whether either Wilson or Brown was Knutson's supervisor at the time the defendants allegedly interfered with Knutson's contract of employment, and thus the court finds that there is a genuine issue of material fact in the present case as to whether Wilson and Brown are or are not subject to a tortious interference claim, based on whether they were or were not third parties to Knutson's contract, or agents of Sioux Tools. *Compare Harbit*, 553 N.W.2d at 331, *with Hunter*, 481 N.W.2d at 518. *See also Grahek*, 473 N.W.2d at 35 (genuine issues of material fact existed as to whether or not a parent company was a third party or party to an employment contract such that the parent company could tortiously interfere with the contract). Although this issue of fact was sufficient to preclude summary judgment on the ground that the tortious interference claim was "preempted" by the ICRA, it does not necessarily preclude summary judgment in favor of the defendants on the merits of Knutson's tortious interference claim. *Anderson*, 477 U.S. at 248 (a factual dispute is "material," and will therefore preclude summary judgment, if it "might affect the outcome of the suit under the governing law"); *Beyerbach*, 49 F.3d at 1326 (same); *Hartnagel*, 953 F.2d at 395 (same).

This court recently analyzed the elements of a claim of tortious interference with employment under Iowa law when the claimant is an at-will employee in *King v. Sioux City Radiological Group, P.C.*, 985 F.Supp. 869 (N.D. Iowa 1997). The court concluded, first, that when the underlying employment is at-will, the claim is analogous to interference with a prospective business advantage, not to interference with an existing contract. *See King*, 985 F.Supp. at 881, (citing *RTL Distrib., Inc. v. Double S Batteries, Inc.*, 545 N.W.2d 587, 590 (Iowa Ct.App.1996)). The court also found that the elements an at-will employee must ultimately prove to prevail on such a claim are the following:

1. The plaintiff was an at-will employee of a third person.

2. The defendant knew of the at-will employment relationship.

3. The defendant intentionally and improperly interfered with the plaintiff's employment relationship in that there must be substantial evidence of a predominant motive on the part of the defendant to terminate the employment of the plaintiff for improper reasons.

4. The interference caused the third person to terminate the plaintiff's employment.

5. The amount of damage.

*King*, 985 F.Supp. at 881–82 (citing *Toney v. Casey's Gen. Stores, Inc.*, 372 N.W.2d 220, 222 (Iowa 1985); *Toney v. Casey's Gen. Stores, Inc.*, 460 N.W.2d 849, 853 (Iowa 1990); *RTL Distrib.*, 545 N.W.2d at 590).

The defendants contend, and the court finds, that Knutson has failed to generate a genuine issue of material fact as to the fourth element, because it is undisputed that Knutson was not terminated from her employment; indeed, she continues to be employed at Sioux Tools. Although Knutson asserts that there is a genuine issue of material fact as to whether Brown and Wilson interfered sufficiently with her employment for this tort claim to lie by interfering with her opportunities for promotion, she has offered no authority for the proposition that such interference would be sufficient to support the claim, and the court has found none. *Compare Toney*, 372 N.W.2d at 222 (stating the element as interference causing a "breach or termination" of the relationship or expectancy). The situation might be different had Knutson

come forward with a showing of a contractual *entitlement* to promotions, but she has pleaded only in conclusory fashion an entitlement to promotions while acknowledging that she was an at-will employee. Again, Knutson has pointed to neither law nor facts that support a claim that interference of the kind alleged would sustain a claim of tortious interference when her employment was not terminated. *See* Fed. R. Civ. P. 56(e) (a party resisting summary judgment must designate "specific facts showing that there is a genuine issue for trial"); *Celotex*, 477 U.S. at 324; *Rabushka*, 122 F.3d at 562; *McLaughlin*, 50 F.3d at 511; *Beyerbach*, 49 F.3d at 1325. The defendants are therefore entitled to summary judgment on Knutson's tortious interference claim in Count VI of her complaint.

### V. CONCLUSION

Although the court has considered the issues raised by the defendants' motion for summary judgment "thematically," it would perhaps be most useful to summarize the disposition of the motion claim by claim. In Count III, Knutson alleges intentional infliction of emotional distress by all defendants individually and as agents of Sioux Tools. The defendants are *not* entitled to summary judgment on this claim on the ground that the ICRA provides Knutson's exclusive remedy for the wrongs alleged to the extent the claim relies on assaultive conduct, which is or may be wrongful independently of whether it is also discriminatory. The defendants are, however, entitled to summary judgment on this claim on the ground that the ICRA provides the exclusive remedy to the extent the claim is based on conduct that is wrongful solely because it is discriminatory. More importantly, the defendants are entitled to summary judgment on the claim in its entirety on the ground that it is time-barred by the applicable two-year statute of limitations found in Iowa Code § 614.1(2), because Knutson has pointed to no part of the record indicating the wrongful conduct on which the claim is based continued after December 8, 1993, two years prior to the filing of her lawsuit in 1995.

Count IV alleges breach of an oral contract by Sioux Tools for an alleged failure to provide Knutson with a physically safe and non-discriminatory work environment. Again, the defendants are not entitled to summary judgment on this claim on the ground that the ICRA provides Knutson's exclusive remedy, because the claim is based in part on failure to prevent assaultive conduct, which is or may be wrongful independently of whether it is also discriminatory. Nor are the defendants entitled to summary judgment on this claim on the ground that it alleges breach of the implied covenant of good faith and fair dealing, and hence asserts a claim that has never been recognized by the Iowa Supreme Court in the employment context. The court does not accept that this is a proper characterization of Knutson's claim, any more than the claim is properly characterized as one for breach of contract. Rather, the court finds that the claim is a tort claim for breach of the common-law duty to provide employees with a safe workplace. The defendants *are* entitled to summary judgment on this claim, however, on the ground that the Iowa workers' compensation act provides Knutson's exclusive remedy for the *employer's* wrong of failure to provide a safe workplace, and on the ground that the claim is time-barred by the applicable two-year statute of limitations.

Count V asserts a claim for assault against defendants Arlyn Wilson and Sioux Tools. Neither Sioux Tools nor Wilson is entitled to summary judgment on Knutson's assault claim on the ground that the claim falls within the exclusive scope of the workers' compensation act. The defendants are entitled to summary judgment on this claim, however, on the ground that it is time-barred under the applicable two-year statute of limitations, Iowa Code § 614.1(2).

Finally, Count VI alleges intentional interference with Knutson's contractual relationship with Sioux Tools by defendants Wilson and Brown. Although there are genuine issues of material fact as to whether Wilson and Brown are third parties to Knutson's employment contract, against whom such a claim may lie, or agents of their employer against whom it is doubtful that such a claim would lie, these issues of fact do not preclude summary judgment in favor of the defendants on the ground that Knutson cannot

prove an essential element of her claim: the requirement that the interference cause her termination. Knutson has offered no authority for the proposition that interference merely with her opportunities for promotion would be sufficient to support the claim, and the court has found none, where she was undisputably an at-will employee with no contractual entitlement to promotions.

In short, the defendants' motion for partial summary judgment is **granted** as to Counts III, IV, V, and VI, which assert supplemental state-law claims. This matter will proceed to trial only on the federal claims asserted in Counts I and II of the complaint.

**IT IS SO ORDERED.**