[Cite as *Machlup v. Bowman*, 2021-Ohio-4370.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

PETER MACHLUP,

       Plaintiff-Appellant,

- v -

JACK BOWMAN,

       Defendant-Appellee.

CASE NO. 2021-P-0044

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2020 CV 00120

---

## O P I N I O N

Decided: December 13, 2021
Judgment: Affirmed in part and reversed in part; remanded.

---

*Peter Machlup*, pro se, 424 Woodard Avenue, Kent, OH 44240 (Plaintiff-Appellant).

*Craig G. Pelini* and *Gianna M. Calzola*, Pelini, Campbell & Williams, LLC, 8040 Cleveland Avenue, NW, Suite 400, North Canton, OH 44720 (For Defendant-Appellee).

THOMAS R. WRIGHT, J.

{¶1} Plaintiff-appellant, Peter Machlup, appeals the trial court's entry granting summary judgment in favor of defendant-appellee, Jack Bowman. The judgment is affirmed in part and reversed in part.

{¶2} Machlup and Bowman own adjacent property in a residential neighborhood. Machlup alleges that Bowman discharged a poisonous substance onto his property and person, causing personal injury, property damage, loss of quiet use and enjoyment, and economic loss. Specifically, Machlup contends Bowman sprayed a store-bought herbicide onto his tall grasses along the shared property line and his garden of medicinal

herbs and food plants. Machlup filed suit against Bowman for trespass, negligence, negligence per se, and civil liability for damages resulting from a criminal act. Machlup's spouse, Kathy Hammonds, also filed suit against Bowman. The two cases were consolidated below but are proceeding independently on appeal. *See Hammonds v. Bowman*, 11th Dist. Portage No. 2021-P-0043.

{¶3} The trial court granted Bowman's motion for summary judgment on all claims, from which Machlup advances three assignments of error:

> [1.] Summary dismissal of *trespass* was error because there is a genuine issue as to the material facts.
>
> [2.] Summary dismissal of *negligence* was error because there is a genuine issue as to the material facts.
>
> [3.] Summary dismissal of *criminal damaging* and resulting *civil liability for a criminal act* was error because there is a genuine issue as to the material facts.

{¶4} We review decisions awarding summary judgment de novo, i.e. independently and without deference to the trial court's decision. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

{¶5} Summary judgment is appropriate only when "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977), citing Civ.R. 56(C). The initial burden is on the moving party to set forth specific facts demonstrating

2

that no issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant meets this burden, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists for trial. *Id.* at 293.

{¶6} Preliminarily, to the extent that Machlup's complaint sounded in common law negligence, he raises no argument on appeal. It is the appellant's burden to affirmatively demonstrate error on appeal. *Tally v. Patrick*, 11th Dist. Trumbull No. 2008-T-0072, 2009-Ohio-1831, ¶ 22. "Furthermore, if an argument exists that can support appellant's assignment of error, 'it is not this court's duty to root it out.'" *Id.*, quoting *Harris v. Nome*, 9th Dist. Summit No. 21071, 2002-Ohio-6994, ¶ 15. *See also* App.R. 16(A)(7) ("The appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."). Accordingly, summary judgment on this claim will not be reversed.

{¶7} Machlup argues that the trial court committed reversible error by granting Bowman's motion because genuine issues of material fact exist that preclude summary judgment on his claims of trespass, negligence per se, and civil liability for damages resulting from a criminal act.

{¶8} Trespass is the unlawful entry upon the property of another or the causing of a thing or a third person to do so. *Chance v. BP Chemicals, Inc.*, 77 Ohio St.3d 17, 24, 670 N.E.2d 985 (1996); *Baker v. Shymkiv*, 6 Ohio St.3d 151, 153, 451 N.E.2d 811 (1983). "To state a cause of action in trespass a property owner must prove two essential

3

elements: (1) an unauthorized intentional act, and (2) an intrusion that interferes with the owner's right of exclusive possession of [his] property." (Citation omitted.) *Merino v. Salem Hunting Club*, 7th Dist. Columbiana No. 07 CO 16, 2008-Ohio-6366, ¶ 41; *Baker* at 153 ("intentional conduct is an element of trespass"). "In Ohio, if the plaintiff proves the elements of trespass, he has a right to nominal damages without proof of actual damages. However, actual damages are a prerequisite to an award of punitive damages." *Merino* at ¶ 42, citing *Fairfield Commons Condominium Assn. v. Stasa*, 30 Ohio App.3d 11, 20, 506 N.E.2d 237 (6th Dist.1985) and *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 82, 461 N.E.2d 1273 (1984).

{¶9} In granting summary judgment, the trial court wrote that "Machlup agreed that the lawn care product was not directly sprayed on his property"; "Machlup testified that Bowman indirectly sprayed onto Plaintiffs' property"; and "There is no proof that Bowman sprayed any sort of poison * * * intentionally and directly onto Plaintiffs' property." Machlup contends these are misstatements of fact, not supported by the record and contradicted by his testimony. We concur.

{¶10} Machlup agreed that Bowman did not directly spray his *person*, but Machlup testified that he and Hammonds' daughter both witnessed Bowman spraying the herbicide directly onto his property, causing Machlup to immediately confront Bowman. The following is the relevant excerpt from Machlup's deposition testimony:

> **Q**. Tell me what happened on June 25th, 2019.
>
> **A**. On June 25th in the very late afternoon, I think it was late afternoon, * * * Kathy's daughter said Jack is spraying onto our property. * * *
> I looked out of my window, and I saw him standing approximately six to eight feet from * * * our shared property line.

4

He was holding a hose. There was a bottle extending beneath the hose, and he was aiming it at what I refer to as our bamboo grass.

The bamboo grass was, on average, about four feet tall. The water coming out of the hose was hitting the grass approximately maybe a foot off the ground covering the grass, and also the water was extending about 25 degrees over the grass.

So the whole cone was maybe 60 degrees or so, and he was hosing the – the grass.

**Q**. You claim that whatever liquid it was was hitting your property.

**A**. Oh, it was hitting it and going over it. So it was hitting the bamboo grass, which is on our property, and also extending over into an arc onto our – our vegetable beds – * * * which are about * * * three feet from the property line.

**Q**. Tell me what else happened.

**A**. I walked out into the mist that was – you spray a hose into the air and there's all this mist.

So I walked out through the poison water, walked up to Jack and said, "Stop spraying poison onto our food. Stop spraying our yard. You're poisoning our food." And he said in response, "I've had enough of your plants."

**Q**. And tell me what happened next.

**A**. And he – and he didn't stop. * * *

* * *

**Q**. Do you claim that [Jack] Bowman ever sprayed this directly into your face?

**A**. Indirectly.

**Q**. Okay. Like if I was to take a garden hose and I wanted – with a nozzle and spray it right at somebody – you know the difference between spraying something directly at somebody's face, right?

**A**. Yes.

5

**Q.** Do you claim Jack Bowman did that to you?

**A.** Not directly.

**Q.** Do you claim that there was mist in the air that, with the movement of the air and the – and the product being in the air, that that's what came into contact with you?

**A.** Absolutely. Seconds –

**Q.** Okay. I understand.

**A.** He had his – he didn't have the hose streamed down for a particular tight stream. It was a slightly wider spray. The wider spray, the direction that he's shooting it – so there was – a huge amount of the water ended up being disbursed in the air * * * and then falling over --

**Q.** Do you know what product he was spraying at that time?

**A.** No. I knew at the time it had a green bottle. I then later learned weeks later it was called Spectracide.

{¶11} Bowman testified that on the day in question, he used a hose to spray Spectracide weed control, purchased from Lowe's, on his own property. He repeatedly denied spraying Machlup's property. For instance:

**Q.** * * * [W]ere any precautions taken by you on that day to avoid spraying at or on or near a garden – a garden of vegetable that was planted on the [neighboring] property?

**A.** I – I did not spray on their property. I – the precautions that were taken is that I sprayed my property.

**Q.** How near to your property – how near to their property would you say the spray went?

**A.** I'm not aware of how close their garden is to my property. * * * I have not measured the distance from the property line to their garden.

**Q.** Well, I'm not asking for feet. * * * I mean, some idea where their garden is relative to where you were spraying.

6

**A**. So if I had to say, I would say it was approximately ten feet from the property line. And I did not spray beyond the property line.

* * *

**Q**. How far of a spray would – how far would the spray go? * * *

**A**. Oh, gosh. I would say it's probably six to ten feet.

* * *

**Q**. Okay. And you were aiming it to the extent that you were trying to avoid, I believe you said, contact with the neighboring property.

**A**. That is correct.

**Q**. Your testimony is that you at no time sprayed directly at, towards, over their property. Is that your testimony?

**A**. In the context that if I'm spraying my property, I was facing at times their property as I back away from the property line. So I wouldn't say that I never aimed toward their property.

{¶12} In his motion for summary judgment, Bowman argued that there is no evidence of an intentional act and therefore no trespass. In making this argument, however, he repeatedly ignores the first part of Machlup's testimony. The trial court echoed this omission. On de novo review of the deposition testimony, viewed most strongly in favor of Machlup as the nonmoving party, reasonable minds could conclude that Bowman did intentionally cause the herbicide to enter Machlup's property. Because this is a genuine issue of material fact that remains to be litigated, Bowman is not entitled to summary judgment as a matter of law on Machlup's claim of trespass.

{¶13} The first assigned error has merit.

7

{¶14} In his complaint, Machlup alleged Bowman committed negligence per se and is civilly liable for damages resulting from a criminal act based on his accusation that Bowman violated two criminal statutes: R.C. 2927.24 (Contaminating a Substance for Human Consumption or Use) and R.C. 2909.06 (Criminal Damaging). We do not address Machlup's allegations regarding R.C. 2927.24, however, as the arguments raised in his appellate brief solely relate to Criminal Damaging under R.C. 2909.06. That statute provides, in relevant part:

> (A) No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent:
>
>> (1) Knowingly, by any means;
>>
>> (2) Recklessly, by means of fire, explosion, flood, poison gas, poison, radioactive material, caustic or corrosive material, or other inherently dangerous agency or substance.
>
> (B) Whoever violates this section is guilty of criminal damaging or endangering, a misdemeanor of the second degree. If a violation of this section creates a risk of physical harm to any person, criminal damaging or endangering is a misdemeanor of the first degree. * * *

{¶15} "The concept of negligence per se allows the plaintiff to prove the first two prongs of the negligence test, duty and breach of duty, by merely showing that the defendant committed or omitted a specific act prohibited or required by statute; no other facts are relevant." (Citations omitted.) *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 15. Because R.C. 2909.06 does not provide for civil liability, however, "'the question of whether violation of the statute constitutes negligence per se depends on the enactment itself.'" *Hurst v. Ent. Title Agency, Inc.*, 157 Ohio App.3d 133, 2004-Ohio-2307, 809 N.E.2d 689, ¶ 26 (11th Dist.), quoting *Mussivand v.*

8

*David*, 45 Ohio St.3d 314, 319, 544 N.E.2d 265 (1989). "Where there exists a legislative enactment commanding or prohibiting for the safety of others the doing of a *specific act* and there is a violation of such enactment solely by one whose duty it is to obey it, such violation constitutes negligence per se[.]" (Emphasis added.) *Eisenhuth v. Moneyhon*, 161 Ohio St. 367, 119 N.E.2d 440 (1954), paragraph three of the syllabus. In other words, "where the duty prescribed by the enactment is so specific that the only determination necessary by the jury is to find but a single fact, a violation of the statute, then there is negligence *per se*." *Hurst v. Ohio Dept. of Rehab. & Corr.*, 72 Ohio St.3d 325, 327, 650 N.E.2d 104 (1995), *overruled on other grounds*, 96 Ohio St.3d 266 (2002), citing *Eisenhuth* at 373-374. But "where the duty is defined 'only in abstract or general terms, leaving to the jury the ascertainment and determination of reasonableness and correctness of acts and conduct under the proven conditions and circumstances, the phrase negligence *per se* has no application.'" *Hurst*, 72 Ohio St.3d at 327, quoting *Swoboda v. Brown*, 129 Ohio St. 512, 523, 196 N.E. 274 (1935); *accord Eisenhuth* at paragraph three of the syllabus.

{¶16} R.C. 2909.06 does not provide for civil liability, and the issue of liability under the statute must be determined by a finder of fact deciding more than a single fact— e.g., whether there was physical harm to property, a lack of consent, and the requisite level of culpability. Thus, negligence per se is inapplicable to a violation of R.C. 2909.06, and Machlup's claim fails as a matter of law. Although the trial court again omitted reference to relevant portions of Machlup's testimony and entered summary judgment on different grounds, we conclude summary judgment was appropriate on the claim of negligence per se.

9

Case No. 2021-P-0044

{¶17} The second assigned error is without merit.

{¶18} Civil liability for damages resulting from a criminal act, pursuant to R.C. 2307.60(A)(1), does not require an underlying criminal conviction. *Buddenberg v. Weisdack*, 161 Ohio St.3d 160, 2020-Ohio-3832, 161 N.E.3d 603, ¶ 6-14. The statute provides:

> *Anyone injured in person or property by a criminal act* has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code. [Emphasis added.]

{¶19} Again, the alleged criminal act is Criminal Damaging in violation of R.C. 2909.06: "(A) No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent: (1) Knowingly, by any means; [or] (2) Recklessly, by means of fire, explosion, flood, poison gas, poison, radioactive material, caustic or corrosive material, or other inherently dangerous agency or substance." As used in the Revised Code, "'Physical harm to property' means any tangible or intangible damage to property that, in any degree, results in loss to its value or interferes with its use or enjoyment." R.C. 2901.01(A)(4). Thus, unlike a claim of trespass, the plaintiff must prove actual damages when alleging civil liability for an act of criminal damaging.

{¶20} In his complaint, Machlup alleged Bowman sprayed the herbicide onto his tall grasses and his garden of medicinal herbs and food plants. On summary judgment, however, Machlup provided no evidence of damage to the grasses or the garden. At oral

argument before this court, Machlup admitted that there was no change to the aesthetic of his garden, and when asked if the tall grasses died after the alleged actions of Bowman, Machlup responded that he did not know.  Accordingly, as pertains to this cause of action, Machlup failed to demonstrate a genuine issue of material fact with respect to actual damages.  Summary judgment was appropriately granted in favor of Bowman on the civil claim of criminal damaging.

{¶21}  The third assigned error is without merit.

{¶22}  The judgment of the Portage County Court of Common Pleas is affirmed in part and reversed in part.  Summary judgment on the claims of negligence, negligence per se, and civil liability for damages resulting from criminal conduct is affirmed.  Summary judgment on the claim of trespass is reversed.  This matter is remanded to the trial court for further proceedings consistent with this opinion.

MARY JANE TRAPP, P.J.,

MATT LYNCH, J.,

concur.

Case No. 2021-P-0044