[Cite as *Hammonds v. Bowman*, 2021-Ohio-4369.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

KATHY HAMMONDS,

      Plaintiff-Appellant,

- v -

JACK BOWMAN,

      Defendant-Appellee.

**CASE NO. 2021-P-0043**

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2019 CV 00817

# O P I N I O N

Decided: December 13, 2021
Judgment: Affirmed in part and reversed in part; remanded.

*Joseph P. Sontich, Jr.*, 8401 Chagrin Road, Suite 20B, Chagrin Falls, OH 44023 (For Plaintiff-Appellant).

*Craig G. Pelini* and *Gianna M. Calzola*, Pelini, Campbell & Williams, LLC, 8040 Cleveland Avenue, NW, Suite 400, North Canton, OH 44720 (For Defendant-Appellee).

THOMAS R. WRIGHT, J.

{¶1} Plaintiff-appellant, Kathy Hammonds, appeals the trial court's entry granting summary judgment in favor of defendant-appellee, Jack Bowman. The judgment is affirmed in part and reversed in part.

{¶2} Hammonds and Bowman own adjacent property in a residential neighborhood. Hammonds alleges that Bowman discharged a poisonous substance onto her property, causing personal injury, property damage, loss of quiet use and enjoyment, and economic loss. Specifically, Hammonds contends Bowman sprayed a store-bought herbicide onto her yard, including the garden area. Hammonds brought claims against

Bowman sounding in trespass, negligence, and negligence per se. Hammonds' spouse, Peter Machlup, also filed suit against Bowman. The two cases were consolidated below but are proceeding independently on appeal. *See Machlup v. Bowman*, 11th Dist. Portage No. 2021-P-0044.

{¶3} The trial court granted Bowman's motion for summary judgment on each claim, from which Hammonds advances three assignments of error:

> [1.] Summary dismissal of *trespass* was error because there is a genuine issue as to the material facts.
>
> [2.] Summary dismissal of *negligence* was error because there is a genuine issue as to the material facts.
>
> [3.] Summary dismissal of *criminal damaging* and resulting *civil liability for a criminal act* was error because there is a genuine issue as to the material facts.

{¶4} We review decisions awarding summary judgment de novo, i.e. independently and without deference to the trial court's decision. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

{¶5} Summary judgment is appropriate only when "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977), citing Civ.R. 56(C). The initial burden is on the moving party to set forth specific facts demonstrating that no issue of material fact exists and that the moving party is entitled to judgment as a

2

matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant meets this burden, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists for trial. *Id.* at 293.

{¶6} Preliminarily, to the extent that Hammonds' complaint sounded in common law negligence, she raises no argument on appeal. It is the appellant's burden to affirmatively demonstrate error on appeal. *Tally v. Patrick*, 11th Dist. Trumbull No. 2008-T-0072, 2009-Ohio-1831, ¶ 22. "Furthermore, if an argument exists that can support appellant's assignment of error, 'it is not this court's duty to root it out.'" *Id.*, quoting *Harris v. Nome*, 9th Dist. Summit No. 21071, 2002-Ohio-6994, ¶ 15. *See also* App.R. 16(A)(7) ("The appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."). Accordingly, summary judgment on this claim will not be reversed.

{¶7} Hammond also alleged that Bowman committed negligence per se. "The concept of negligence per se allows the plaintiff to prove the first two prongs of the negligence test, duty and breach of duty, by merely showing that the defendant committed or omitted a specific act prohibited or required by statute; no other facts are relevant." (Citations omitted.) *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 15. In her complaint, Hammonds alleged Bowman violated R.C. 2927.24 (Contaminating a Substance for Human Consumption or Use). The argument raised in her appellate brief, however, solely relates to an accusation that Bowman committed negligence per se by violating R.C. 2909.06 (Criminal Damaging). Further,

3

the argument raised in her appellate brief that Bowman is civilly liable for damages resulting from a criminal act in violation of R.C. 2909.06 was not alleged in her complaint. Because allegations may not be raised for the first time on appeal, Hammonds' second and third assigned errors are overruled.

{¶8}  In her first assigned error, Hammonds argues that genuine issues of material fact exist that preclude summary judgment on her claim of trespass.

{¶9}  Trespass is the unlawful entry upon the property of another or the causing of a thing or a third person to do so.  *Chance v. BP Chemicals, Inc.*, 77 Ohio St.3d 17, 24, 670 N.E.2d 985 (1996); *Baker v. Shymkiv*, 6 Ohio St.3d 151, 153, 451 N.E.2d 811 (1983).  "To state a cause of action in trespass a property owner must prove two essential elements: (1) an unauthorized intentional act, and (2) an intrusion that interferes with the owner's right of exclusive possession of her property."  (Citation omitted.)  *Merino v. Salem Hunting Club*, 7th Dist. Columbiana No. 07 CO 16, 2008-Ohio-6366, ¶ 41; *Baker* at 153 ("intentional conduct is an element of trespass").  "In Ohio, if the plaintiff proves the elements of trespass, [she] has a right to nominal damages without proof of actual damages.  However, actual damages are a prerequisite to an award of punitive damages."  *Merino* at ¶ 42, citing *Fairfield Commons Condominium Assn. v. Stasa*, 30 Ohio App.3d 11, 20, 506 N.E.2d 237 (6th Dist.1985) and *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 82, 461 N.E.2d 1273 (1984).

{¶10} In granting summary judgment, the trial court wrote that "Machlup agreed that the lawn care product was not directly sprayed on his property"; "Machlup testified that Bowman indirectly sprayed onto Plaintiffs' property"; and "There is no proof that Bowman sprayed any sort of poison * * * intentionally and directly onto Plaintiffs' property."

4

Hammonds contends these are misstatements of fact, not supported by the record and contradicted by the deposition testimony. We concur.

{¶11} While Machlup agreed that Bowman did not directly spray his *person*, Machlup testified that he and Hammonds' daughter both witnessed Bowman spraying the herbicide directly onto their property, causing Machlup to immediately confront Bowman. The following is the relevant excerpt from Machlup's deposition testimony:

> **Q**. Tell me what happened on June 25th, 2019.
>
> **A**. On June 25th in the very late afternoon, I think it was late afternoon, * * * Kathy's daughter said Jack is spraying onto our property. * * *
> I looked out of my window, and I saw him standing approximately six to eight feet from * * * our shared property line.
> He was holding a hose. There was a bottle extending beneath the hose, and he was aiming it at what I refer to as our bamboo grass.
> The bamboo grass was, on average, about four feet tall. The water coming out of the hose was hitting the grass approximately maybe a foot off the ground covering the grass, and also the water was extending about 25 degrees over the grass.
> So the whole cone was maybe 60 degrees or so, and he was hosing the – the grass.
>
> **Q**. You claim that whatever liquid it was was hitting your property.
>
> **A**. Oh, it was hitting it and going over it. So it was hitting the bamboo grass, which is on our property, and also extending over into an arc onto our – our vegetable beds – * * * which are about * * * three feet from the property line.
>
> **Q**. Tell me what else happened.
>
> **A**. I walked out into the mist that was – you spray a hose into the air and there's all this mist.
> So I walked out through the poison water, walked up to Jack and said, "Stop spraying poison onto our food. Stop

5

spraying our yard. You're poisoning our food." And he said in response, "I've had enough of your plants."

**Q**. And tell me what happened next.

**A**. And he – and he didn't stop. * * *

* * *

**Q**. Do you claim that [Jack] Bowman ever sprayed this directly into your face?

**A**. Indirectly.

**Q**. Okay. Like if I was to take a garden hose and I wanted – with a nozzle and spray it right at somebody – you know the difference between spraying something directly at somebody's face, right?

**A**. Yes.

**Q**. Do you claim Jack Bowman did that to you?

**A**. Not directly.

**Q**. Do you claim that there was mist in the air that, with the movement of the air and the – and the product being in the air, that that's what came into contact with you?

**A**. Absolutely. Seconds –

**Q**. Okay. I understand.

**A**. He had his – he didn't have the hose streamed down for a particular tight stream. It was a slightly wider spray. The wider spray, the direction that he's shooting it – so there was – a huge amount of the water ended up being disbursed in the air * * * and then falling over --

**Q**. Do you know what product he was spraying at that time?

**A**. No. I knew at the time it had a green bottle. I then later learned weeks later it was called Spectracide.

{¶12} Additionally, Hammonds testified as follows:

6

Case No. 2021-P-0043

**Q.** Do you claim that Jack discharged this commercial product directly onto your property?

**A.** Yes.

**Q.** What day?

**A.** June 25th, 2019.

**Q.** Tell me what you saw.

**A.** I saw my husband run down the stairs in a – in a hurry and said, "Jack's poisoning our property," and he ran outside.
    I tried to look – I don't have any windows that face Jack's property, so I tried to look to see what was going on, but it was out of my vision. And I kept trying to look. I ran upstairs to see if I could see him, and I could not.
    But then later he made his way to the front yard and I could see him from the window standing near our property and spraying into our property.

**Q.** How close did he get to your property?

**A.** Physically with his physical body?

**Q.** Yes, please.

**A.** Three to four feet facing east toward our property.

{¶13} Bowman testified that on the day in question, he used a hose to spray Spectracide weed control, purchased from Lowe's, on his own property. He repeatedly denied spraying Hammonds' property. For instance:

**Q.** * * * [W]ere any precautions taken by you on that day to avoid spraying at or on or near a garden – a garden of vegetable that was planted on the [neighboring] property?

**A.** I – I did not spray on their property. I – the precautions that were taken is that I sprayed my property.

**Q.** How near to your property – how near to their property would you say the spray went?

7

Case No. 2021-P-0043

**A**. I'm not aware of how close their garden is to my property. * * * I have not measured the distance from the property line to their garden.

**Q**. Well, I'm not asking for feet. * * * I mean, some idea where their garden is relative to where you were spraying.

**A**. So if I had to say, I would say it was approximately ten feet from the property line. And I did not spray beyond the property line.

* * *

**Q**. How far of a spray would – how far would the spray go? * * *

**A**. Oh, gosh. I would say it's probably six to ten feet.

* * *

**Q**. Okay. And you were aiming it to the extent that you were trying to avoid, I believe you said, contact with the neighboring property.

**A**. That is correct.

**Q**. Your testimony is that you at no time sprayed directly at, towards, over their property. Is that your testimony?

**A**. In the context that if I'm spraying my property, I was facing at times their property as I back away from the property line. So I wouldn't say that I never aimed toward their property.

{¶14} In his motion for summary judgment, Bowman argued that there is no evidence of an intentional act and therefore no trespass. In making this argument, he repeatedly ignores the first part of Machlup's testimony as well as Hammonds' testimony. The trial court echoed this omission. On de novo review of the deposition testimony, viewed most strongly in favor of Hammonds as the nonmoving party, reasonable minds could conclude that Bowman did intentionally cause the herbicide to enter Hammonds' property. Because this is a genuine issue of material fact that remains to be litigated,

8

Bowman is not entitled to summary judgment as a matter of law on Hammonds' claim of trespass.

{¶15} The first assigned error has merit.

{¶16} The judgment of the Portage County Court of Common Pleas is affirmed in part and reversed in part. Summary judgment on the claims of negligence and negligence per se is affirmed. Summary judgment on the claim of trespass is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion.

MARY JANE TRAPP, P.J.,

MATT LYNCH, J.,

concur.

9

Case No. 2021-P-0043